**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SPRINT PREMIUM DATA PLAN MARKETING AND SALES PRACTICES LITIGATION | Master Case No. 10-6334 (SDW) MDL No. 2228 |

---------------------------------------------------------------------------------------------------

**PLAINTIFFS' MEMORANDUMOF LAW IN OPPOSITION TO SPRINT'S MOTION TO COMPEL BILATERAL ARBITRATION AND DISMISS OR STAY ALL ACTIONS**

---------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

I.      Introduction ..............................................................................................................1

II.     Applicable Law .......................................................................................................3

        A.      New Jersey Law Is Applicable to New Jersey Plaintiffs' Claims ............................4

        B.      California Law Applies To Cases Transferred From California .............................4

III.    Sprint's Arbitration Agreement Is Unenforceable
        Because The Most Essential Terms Are Omitted And Uncertain .......................................5

        A.      Applicable Legal Standard..........................................................................5

        B.      There is No Meeting Of The Minds Regarding Sprint's Arbitration
                Agreement And It Fails To Reference Submitting Statutory Claims to Arbitration .9

IV.     Sprint's Arbitration Agreement Is Unenforceable Because It Would Impose
        Excessive Costs That Would Prevent A Plaintiff From Effectively
        Vindicating Unwaivable Statutory Rights ........................................................13

        A.      Applicable Legal Standards .......................................................................13

                1.      The Supreme Court's *Green Tree* Standard..................................13

                2.      The California *Armendariz* Standard ...........................................14

                3.      The Third Circuit's *Blair* Standard ............................................17

        B.      Sprint's Arbitration Agreement Violates The *Armendariz* Rule
                And The *Blair* Rule By Requiring A Plaintiff To Bear Arbitral
                Expenses He/She Would Not Bear In A Court Action ..............................18

        C.      Sprint's Arbitration Agreement Violates The *Green Tree* Rule
                By Making It "Prohibitively Expensive" For A Plaintiff To
                Arbitrate His/Her Claim Individually .......................................................19

        D.      Concepcion Does Not Affect The Analysis Under
                *Green Tree*, *Armendariz*, and *Blair* ........................................................20

        E.      Sprint's Legally Defective Arbitration Agreement Cannot
                Be Resuscitated By Offering to Change It................................................23

V.      Sprint's Arbitration Agreement Is Unenforceable Because It Is Unconscionable ...............23

        A.      Procedural Unconscionability...................................................................25

B.      Substantive Unconscionability.................................................................27

C.      The Unenforceable Arbitration Provisions Are Not Severable .................................27

VI.    Plaintiffs' Claims For Injunctive Relief Under The CLRA And UCL Are Not Arbitrable .27

VII.   Sprint's Arbitration Agreement Is Unenforceable Because It Is
       Contrary To The Federal Communications Act....................................................29

VIII.  Conclusion ...........................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*ACORN v. Household International, Inc.*, 211 F.Supp.2d 1160 (N.D. Cal. 2002)........................ 16
*Adamson v. Foulke Management Corp.*, 2009 WL 5174642 (D.N.J. December 18, 2009).......... 23
*Adkins v. Sogliuzzo,* 2010 WL 502980 (D.N.J. February 9, 2010)............................................ 5, 9
*Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83 (2000)........... 1, 14, 25
*Assaad v. American National Ins. Co.*, 2010 WL 5416841 (N.D. Cal. Dec. 23, 2010) .............. 16
*AT&T Mobility II, LLC v. Pestano*, 2008 WL 682523 (N.D. Cal. Mar. 7, 2008).................. 15, 16
*AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) .................................................. passim
*Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir. 2002) ................................................. 1, 17, 30
*Bradford v. Rockwell Semiconductor System Inc.*, 238 F.3d 549 (4th Cir. 2001) ...................... 17
*Broughton v. Cigna Healthplans of California,* 21 Cal.4th 1066 (1999) ..................................... 28
*Brown v. Ralphs Grocery Co.*, 2011 WL 2685959 (Cal. Ct. App. July 12, 2011) ...................... 28
*Caban v. J.P. Morgan Chase & Co.*, 606 F.Supp.3d 1361 (S.D. Fla. 2009)............................... 14
*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000)............................................................. 4
*Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010) ........................................ 4
*Circuit City Stores v. Adams*, 279 F.3d 889, 893-94  (9th Cir. 2002) ......................................... 16
*Competitive Telecommunications Assn. v. FCC*, 998 F.2d 1058 (D.C.Cir. 1993) ...................... 29
*Copeland v. Nixon*, 396 Fed. Appx. 784 (3d Cir. 2010) .............................................................. 24
*Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303 (2003) ................................................. 3, 28
*D.C. v. Harvard-Westlake School*, 176 Cal.App.4th 836 (2009).................................................. 15
*Dale v. Comcast Corporation*, 498 F.3d 1216 (11th Cir. 2007).................................................. 14
*Delta Funding Corp. v. Harris,* 189 N.J. 28 (2006) ............................................................. 23, 24
*Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) ........................................................... 20
*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996)..................................................... 23
*Dunham v. Environmental Chemical Corp.*, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006)....... 16
*Estate of Cohen v. Booth Computers*, 22 A.3d 1991 (N.J. App. Div. 2011) ............................... 27
*Fawzy v. Fawzy*, 199 N.J. 456 (2009)........................................................................................ 8
*Ferens v. John Deere Comp.*, 494 U.S. 516 (1990).................................................................... 4
*Garfinkel v. Morristown Obstetrics & Gynecology Association*, 168 N.J. 124 (2001) ........... 8, 12
*Gelow v. Central Pacific Mortgage Corp.*, 560 F.Supp.2d 972 (E.D. Cal. 2008)........................ 17
*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)................................................... 13
*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000) ..................................................... 13, 15
*Harris v. Greentree Financial Corp.,* 183 F.3d 173 (3d Cir. 1999) ........................................... 25
*Homa v. American Express Co.,* 2010 WL 4116481 (D.N.J. 2010).......................................... 24
*Homa v. American Express Co.,* 558 F.3d 225, 229 (3d Cir. 2009) ..................................... 23, 26
*Horton v. California Credit Corp.*, 2009 WL 2488031 (S.D. Cal. Aug. 13, 2009)..................... 16
*In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570 (5th Cir. 1996) ........................ 4
*In re American Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011)....................... 13, 14, 16
*In re Armstrong World Indus.*, 432 F.3d 507 (3d Cir. 2005)........................................................ 2
*In re Checking Account Overdraft Litigation*, 734 F.Supp.2d 1279 (S.D. Fla. 2010)................. 14
*In re Mercedes-Benz Tele-Aid Contract Litig.,* 257 F.R.D. 46 (D.N.J. 2009)............................. 4
*In re Vioxx Prod. Liab. Litig.*, 478 F.Supp.2d 897 (E.D. La. 2007) ............................................ 4
*Ingle v. Circuit City Stores*, 328 F.3d 1165 (9th Cir. 2003) ...................................................... 16
*Jackson v. S.A.W. Entertainment Ltd.*, 629 F.Supp.2d 1018 (N.D. Cal. 2009) ........................... 16
*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006)............................................................ 14

*Macintosh v. Powered, Inc.*, 2011 WL 2237938 (Cal. Ct. App. June 8, 2011) ........................... 15
*Marchak v. Claridge Commons, Inc.,* 134 N.J. 275 (1993) ........................................................ 8
*Mercuro v. Superior Court,* 96 Cal.App.4th 167 (2002) ............................................................ 15
*Mintze v. American Financial Services, Inc.*, 434 F.3d 222 (3d Cir. 2006) ................................. 2
*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ...................... 13
*Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001).......... 2
*Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.,*
   416 N.J.Super. 30 (App.Div. 2010) ....................................................................................... 8
*Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305 (2005) ................................... 25, 27
*Muhammad v. County Bank of Rehoboth Beach,* 189 N.J. 1 (2006) ..................................... 25, 26
*NAACP of Camden County East v. Foulke Management Corp.,*
   2011 WL 3273896 (N.J. Super App. Div. August 2, 2011) ........................................... passim
*New Hampshire v. Maine,* 532 U.S. 742 (2001) .......................................................................... 2
*Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282 (3d Cir.1993)................................... 5
*Parada v. Superior Court*, 176 Cal.App.4th 1554 (2009) ........................................................ 26
*Parilla v. IAP Worldwide*, 368 F.3d 269 (3d Cir. 2004)............................................................ 23
*Patterson v. ITT Consumer Financial Corp.*, 14 Cal.App.4th 1659 (1993) .............................. 20
*Rockel v. Cherry Hill Dodge*, 368 N.J.Super. 577 (App.Div. 2004). ............................... 6, 7, 8, 9
*Saxon Const. & Management Corp. v. Masterclean, Inc.,*
   273 N.J.Super. 231 (App.Div. 1994) .................................................................................. 24
*See Broughton v. Cigna Healthplans of California,* 21 Cal.4th 1066 (1999)................................ 3
*Shankle v. B-G Maint., Inc.,* 163 F.3d 1230 (10th Cir. 1999).................................................. 14
*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ....................................... 13
*Sutherland v. Ernst & Young LLP*, 768 F.Supp.2d 547 (S.D.N.Y. 2011) .................................. 14
*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ........................................................................ 16
*Union Telephone Co., v. Qwest Corp.*, 495 F.3d 1187 (10th Cir. 2007) ................................... 30
*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ............................................................................ 5
*Vilches v. The Travelers Co., Inc.,* 2011 U.S. App. Lexis 2551 (3d Cir. 2011) .......................... 26

**Statutes**
28 U.S.C. § 1407 ........................................................................................................................ 5
47 U.S.C. § 201(b) ................................................................................................................... 29
47 U.S.C. § 202(a) ............................................................................................................. 29, 30
California Business and Professional Code § 17200 ..................................................................... 5
California Civil Code § 1670.5(a) ..................................................................................... 24, 27
California Civil Code §1751 ....................................................................................................... 28
N.J.S.A. 56:8-2 .......................................................................................................................... 24

**Other Authorities**
1 Corbin, *Contracts* § 4.10 (1993) .............................................................................................. 5
RESTATEMENT 2D OF CONTRACTS § 20 ......................................................................................... 5

iv

## I.     INTRODUCTION

Notwithstanding Sprint's assertions to the contrary, *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) does not mandate the enforcement of Sprint's arbitration agreement in this case for at least three reasons.  First, *Concepcion* did not overrule a district court's discretion to determine whether an arbitration agreement, just like any other contract, violates traditional legal doctrines governing contract formation and interpretation.  *See NAACP of Camden County East v. Foulke Management Corp.* 2011 WL 3273896 at *14 (N.J. Super App. Div. August 2, 2011) ("*NAACP*").   Second, *Concepcion* did not overrule or even discuss the Supreme Court's prior decision in *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 90 (2000) where it established the rule that an arbitration agreement is unenforceable if "large arbitration costs could preclude a litigant from effectively vindicating her statutory rights in the individual arbitral forum".  *Id.* Finally, *Concepcion* did not overrule *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83 (2000) or *Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir. 2002) which further define the process and standards by which federal and state courts applying California and Third Circuit law determine the validity of an arbitration agreement.

Sprint's arbitration agreement is unenforceable because it does not comport with traditional legal doctrines governing contract formation and interpretation and it would impose excessive costs that prevent an individual consumer from vindicating his or her unwaivable statutory rights.  Not surprisingly, Sprint's twenty-nine-page memorandum fails to consider – much less address – these issues.  Sprint did not address the *Armendariz* rule or the *Blair* rule and Sprint failed to show that its arbitration agreement comports with those well-established legal standards for determining enforceability. Instead, Sprint simply presumes that its agreement is valid based on *Concepcion.*  As demonstrated below, Sprint's arbitration agreement fails to

comport with the standards required for enforcing an arbitration agreement on an individual who was asked to waive all rights to go to court in a contract of adhesion.[1]

Plaintiffs allege that Sprint double-bills or over-bills wireless customers who subscribed to an unlimited data plan at a fixed monthly price, by charging an additional $10.00 monthly "Premium Data Add-On" fee for the[2] same unlimited data service they had already contractually agreed to pay. Each Plaintiff seeks to recover the $10.00 per month and an injunction requiring Sprint to cease the improper billing of "premium data" charges. (Second Consolidated Amended Complaint at ¶ 2). It would cost each Plaintiff approximately $150,575 to $200,575, exclusive of attorney's fees, to pursue his claim in an individual arbitration. *See* Bursor Decl. at ¶ 7. Further, no consumer is told what the rules are that will govern its arbitration until <u>after</u> he has already waived all of his rights to go to Court. It is not until <u>after</u> making a request to Sprint to submit a claim to arbitration, that a consumer learns what rules will apply. **Incredibly, Sprint's**

---

[1]    Sprint's "Dispute Resolution" clause is not confined to an arbitration clause. It also required the parties to forego consolidation – of arbitration *or* lawsuits – stating the parties "waive any right to either join a claim with the claim of any other person or entity… in any lawsuit, arbitration or other proceeding." Contrary to this, Sprint sought (and obtained) from the MDL panel a joinder which consolidated the claims of all these suits into one proceeding. Having done so for itself, Sprint is judicially estopped from now using this clause against plaintiffs. Judicial estoppel is an equitable doctrine that "prevents a party from asserting inconsistent claims in different legal proceedings." *Mintze v. American Financial Services, Inc.*, 434 F.3d 222, 232 (3d Cir. 2006). "Its purpose is to protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'" *In re Armstrong World Indus.*, 432 F.3d 507, 517 (3d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

Here, Sprint seeks to enforce its Dispute Resolution terms despite the fact that it failed to comply with them itself, and did the opposite before the MDL panel and this court. Sprint used procedures only available in litigation to its advantage to consolidate the disputes; it cannot rely on the same clause to block litigation to determine the disputes. This conduct gives Sprint an unfair advantage and should not be allowed by this Court. *Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001).

[2]    The Second Amended Consolidated Complaint ("Complaint") appears at Docket Entry 35.

**arbitration agreement omits the rules of arbitration,** an obviously essential term, and makes no specific reference to submitting **statutory** claims to arbitration.[3]

Sprint's arbitration agreement is also laden with other inconsistencies, ambiguities, and cost prohibitive terms.  The failure to include obviously essential terms or to have clear and certain language so that a consumer has a clear understanding of the ramifications of what he is agreeing to is fatal to the enforceability of any contract, including an arbitration agreement. *NAACP*, 2011 WL 3273896 at *10-11.  *Concepcion* did nothing to change that.  In addition, the excessive costs that a plaintiff would have to bear to effectively vindicate his/her claim in an individual arbitration against Sprint renders the agreement unenforceable under *Green Tree, Armendariz, Blair,* and general state law unconscionability principles codified at California's Civil Code §1670.5 and New Jersey's Consumer Fraud Act ("NJCFA") (N.J.S.A. 56:8-1, *et seq.*) *Concepcion* did nothing to change that either.

Furthermore, Plaintiffs' claims for injunctive relief under the CLRA and UCL are also not arbitrable.  *See Broughton v. Cigna Healthplans of California,* 21 Cal.4th 1066, 1079–80 (1999) (holding claims for injunctive relief brought under the CLRA are not subject to arbitration); *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 316 (2003) (holding claims for injunctive relief brought under the UCL are not subject to arbitration).

Finally, Sprint's arbitration agreement is also unenforceable because it is contrary to the Federal Communications Act.

## II.    APPLICABLE LAW

For the reasons set forth below, this Court must apply the substantive law of both New Jersey and California with respect to the issues raised in Sprint's motion to compel bilateral

---

[3]      Sprint's form Terms and Conditions of Service ("Sprint Terms") are annexed as Exhibit A to the Declaration of Stephanie Miller, Docket Entry 37-6

arbitration and dismiss or stay all actions.  *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) ("A federal court sitting in diversity must apply state law and federal procedural law.").

### A.     New Jersey Law Is Applicable to New Jersey Plaintiffs' Claims

In cases filed directly into a multidistrict litigation ("MDL") court by citizens who reside in the MDL court's judicial district, the MDL court must apply its own state law where it sits.  *In re Vioxx Prod. Liab. Litig.*, 478 F.Supp.2d 897, 903 (E.D. La. 2007).   One of the named Plaintiffs in this consolidated class action is Jeffrey Kahn.  Mr. Kahn is a citizen of New Jersey, residing in Livingston, New Jersey.  (Complaint at ¶ 20).  Because Mr. Kahn's original filed action against Sprint and the Second Consolidated Amended Complaint were both filed in the United States District Court for the District of New Jersey, which is the district where Mr. Kahn resides and where this MDL proceeding is pending, this Court is required to apply New Jersey law.  Additionally, this Court must apply New Jersey law as the Complaint specifically contains a claim against Sprint for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.  (Complaint at ¶¶ 100-108).

### B.     California Law Applies To Cases Transferred From California

It is well settled, that "[w]hen a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred…."  *In re Mercedes-Benz Tele-Aid Contract Litig.,* 257 F.R.D. 46, 55 (D.N.J. 2009); *Chang v. Baxter Healthcare Corp*., 599 F.3d 728, 732 (7th Cir. 2010); *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996) (holding that where a transferee court presides over several diversity actions in a multidistrict proceeding, the transferee court must apply the state substantive law of each jurisdiction in which the transferred actions were originally filed); *Ferens v. John Deere Comp*., 494 U.S. 516, 532 (1990); *Van Dusen v. Barrack*, 376 U.S. 612,

639 (1964) ("The transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. . . .").

In this case, seven of the actions that were consolidated and transferred here by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 were originally filed in District Courts in California. Moreover, there are Plaintiffs named in the Complaint that are also citizens and residents of California. Additionally, the Complaint contains a claim against Sprint for unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law, California Business and Professional Code § 17200, *et. seq.* (Complaint at ¶¶ 96-99) Because several of the original actions that were ultimately consolidated and transferred to this Court pursuant to 28 U.S.C. § 1407 originated in California, this Court must apply the substantive law of California, the transferor forum.

## III. SPRINT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE THE MOST ESSENTIAL TERMS ARE OMITTED AND UNCERTAIN

### A. Applicable Legal Standard

The presence of an ambiguous material term may indicate that no meeting of the minds occurred when the document was signed. 1 Corbin, *Contracts* § 4.10 (1993); RESTATEMENT 2D OF CONTRACTS § 20 ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other...."). The validity of any contract requires the mutual assent of the parties. *See Adkins v. Sogliuzzo,* 2010 WL 502980 at *2 (D.N.J. February 9, 2010) (citing *Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282, 287 (3d Cir.1993)). New Jersey courts have applied this basic principle of contract formation to invalidate arbitration agreements where the terms of the agreement are ambiguous or uncertain. *See, e.g.*, *NAACP,*

5

2011 WL 3273896 at *14 and *Rockel v. Cherry Hill Dodge*, 368 N.J.Super. 577, 580 (App.Div. 2004).

In *NAACP*, which was decided after *Concepcion*, the Appellate Division, noting that arbitration agreements are often embedded in contracts of adhesion, held that in order for an arbitration agreement to be valid, the arbitration agreement *must* comply with customary principles of contract law.  Specifically, the arbitration agreement must be the product of mutual assent and must also contain terms that are clear, consistent, and unambiguous.  *NAACP*, 2011 WL 3273896 at *10-11.  The Appellate Division also specifically noted that, "in the aftermath of [*Concepcion*], state courts remain free to decline to enforce an arbitration provision by invoking traditional legal doctrines governing the formation of a contract and its interpretation . . . As part of that assessment, we must examine whether the terms of the provisions were stated with sufficient clarity and consistency to be reasonably understood by the consumer who is being charged with waiving her right to litigate a dispute in court."  *Id*. at *12.

The plaintiff in *NAACP* sued the car dealership from where she had purchased a new car, alleging that the defendant's sales practices violated several New Jersey statutes, including the Consumer Fraud Act.  The defendant moved to dismiss plaintiff's claims and to compel arbitration in accordance with the sales contract and financing documents.  *Id*. at *6-7, 9.

The Appellate Division provided an exhaustive analysis explaining why the arbitration agreement did not comport with New Jersey contract principles requiring an arbitration agreement to be the product of mutual assent among the parties.  As set forth in section III B. below, many of the deficiencies in the arbitration agreement found by the Appellate Division in *NAACP* are present in Sprint's arbitration agreement and therefore, a similar outcome is required, i.e., this Court should declare Sprint's arbitration agreement  unenforceable.

6

First, the Appellate Division in *NAACP* noted that the arbitration agreement, similar to Sprint's arbitration agreement, consisted of "form documents" "laden with fine print" which did not "plainly convey-with precision and consistency-what the exact terms and conditions" of the arbitration process would be. *Id*. at *14. In this regard, the court noted that the contract documents did not "clearly and consistently" express the nature and locale of the arbitration forum. *Id*. Further, while one form document stated that the arbitration would be conducted under the rules of the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"), other form documents restricted arbitration to only AAA rules. Additionally, while one form document stated that the arbitrator shall be an attorney or retired judge, another form document stated that the arbitrator shall be selected in accordance with AAA rules, which do not require arbitrators to be attorneys. *See id*.

The Appellate Division further noted that, "[e]qually murky and confusing" were the "assorted costs [of the arbitration] and who [was] to bear them." *Id*. at *15. The court also specifically stated that the conflicting and ambiguous language relating to venue, time limitations, and costs were all "material parts" of the arbitration provisions and therefore "too convoluted and inconsistent to be enforced." *Id*. at *18, 20.

*Rockel v. Cherry Hill Dodge*, 368 N.J.Super. 577 (App.Div. 2004) is another case where the Appellate Division invalidated a mandatory arbitration provision because it contained conflicting and ambiguous terms. In *Rockel*, the plaintiffs asserted a claim against a car dealership under the Consumer Fraud Act alleging that the dealership induced them to purchase or lease motor vehicles.

The Appellate Division noted that New Jersey law requires that arbitration provisions be examined on a case-by-case basis. *See id*. at 580. The Appellate Division ultimately concluded that, "the uncertain content of the parties' agreement to arbitrate, the contracts' conflicting

7

descriptions of the manner and procedure which would govern the arbitration proceedings, the absence of a definitive waiver of plaintiffs' **statutory** claims . . . militate against the entry of an order requiring arbitration over plaintiffs' objection." *Id.* (emphasis supplied). Thus, the court determined that "the arbitration provisions at hand significantly skew the balance of the CFA [Consumer Fraud Act] and the policy in favor of the arbitration of disputes, thus requiring a rejection of defendants' attempts to compel arbitration." *Id.*

Additionally, in holding the arbitration agreement invalid, the court in *Rockel* emphasized the fact that the arbitration agreement did not contain any unambiguous language which indicated a "clear waiver of **statutory** rights" as required by the New Jersey Supreme Court in *Garfinkel v. Morristown Obstetrics & Gynecology Association*, 168 N.J. 124 (2001). As such, the Appellate Division rejected the defendant's argument that language contained in an arbitration provision stating that "any controversy or claim arising out of or relating to this Agreement" shall be "settled by arbitration," as contained in the arbitration agreement at issue, represented a sufficient foundation for an order compelling arbitration. *Id.* at 585.

In this regard, the Appellate Division in *Rockel* stated, "[t]he delicate balance between the policies of the CFA and the policy in favor of arbitration requires that the consumer be given reasonable notice of such provisions, **that the provisions contain a clear waiver of statutory rights**, and that the arbitration agreement be phrased in unambiguous terms." *Id.* at 586. (emphasis added) *Accord Fawzy v. Fawzy,* 199 N.J. 456, 469-70 (2009) (because arbitration provisions are often embedded in contracts of adhesion, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent). *see also Marchak v. Claridge Commons, Inc.,* 134 N.J. 275, 282 (1993); *Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.,* 416 N.J.Super. 30, 37 (App.Div. 2010) ("This requirement of a 'consensual understanding' about the rights of access to

8

the courts that are waived in the agreement has led our courts to hold that clarity is required.")
(quoting *Fawzy*, 199 N.J. at 469–70).

In *Adkins v. Sogliuzzo*, 2010 WL 502980 (D.N.J. February 9, 2010), this Court was
presented with the issue of determining the validity of an arbitration agreement in a case where
the plaintiffs sued a bank and others for allegedly exerting undue influence over a decedent to
force her into executing a transfer on death account agreement.   In determining whether the
arbitration agreement was valid, this Court acknowledged New Jersey law that the "validity of
any contract requires the mutual assent of the parties."   *Id*. at *3.   This Court further noted that,
"[i]n addressing a motion to compel arbitration, a court cannot decide the question of whether or
not there was an agreement to arbitrate unless there are no genuine issues of material fact.
Where genuine issues of material fact exist, a court must proceed to a summary trial of that
issue."   *Id*.   Because there were genuine issues of material fact presented, this Court denied the
motion to dismiss and to compel arbitration.   *See id*. at *9.

B.      There is No Meeting Of The Minds Regarding Sprint's Arbitration
        Agreement And It Fails To Reference Submitting Statutory Claims to
        Arbitration

The arbitration provisions contained in Sprint's Terms required to be examined by this
Court on an individual case-by-case basis.   *Rockel*, 368 N.J. Super. at 580.   As explained below,
Sprint's arbitration agreement contains similar, if not more egregious, deficiencies than were
found to have existed in both *NAACP* and *Rockel*.   These deficiencies render Sprint's arbitration
agreement unenforceable as a matter of law.

As a threshold matter, it is undisputed that the arbitration provisions contained in Sprint's
Terms are "form documents" that are "laden with fine print" – similar to the contract documents
at issue in both *NAACP* and *Rockel*.   It is also undisputed that Plaintiffs were never provided the

opportunity to negotiate the language contained in Sprint's Terms, including the language relating to the arbitration provisions.

The Appellate Division in *NAACP* emphasized the fact that the arbitration agreement at issue in that case was confusing and ambiguous because the form documents made reference to arbitration being conducted under the rules of multiple and different arbitration forums.  In the present case, Sprint's arbitration agreement is even more confusing and ambiguous than the arbitration agreement at issue in *NAACP,* because it contains absolutely *no language* indicating which arbitration rules or forum will be utilized to resolve disputes.   Sprint's arbitration agreement merely states in relevant part that, "[t]he arbitration will be governed by the arbitration rules selected by the Arbitrator."  Sprint Terms at 12

As such, in the event Plaintiffs seek arbitration of their individual claims, it is impossible for them to know what arbitration rules will be selected and applied by the arbitrator, or even what arbitration forum (administrator) will be used.  *See* Bursor Decl. ¶ 5.  This is significant because there are numerous arbitration administrators that could preside over Plaintiffs' claims and even more variations in the arbitral rules that could be "selected" by the arbitrator (*e.g.,* American Arbitration Association, "AAA"; Judicial Arbitration and Mediation Service. "JAMS"; National Arbitration Forum, "NAF").  *Id.*

In holding that the arbitration agreement at issue in *NAACP* was ambiguous and unenforceable, the court in *NAACP* specifically highlighted the fact that the contract documents conflicted as to determining the required qualifications of the arbitrator.  *See NAACP*, 2011 WL 3273896 at *14.  In the present case, similar ambiguity is presented as to who would preside over an arbitration as there is **no** language in Sprint's arbitration agreement specifying the rules governing arbitration or the arbitration forum, let alone the required qualifications of the arbitrator.

10

Sprint's arbitration agreement also contains conflicting terms concerning whether and when a customer should file a dispute in arbitration, "small claims court," or with a "federal, state, or local government agency."  Sprint's arbitration agreement states on page 11, under the heading, "**Instead of Suing in Court, We Each Agree To Arbitrate Disputes,**" "[w]e each agree to finally settle all disputes (as defined and subject to any specific exceptions below) only by arbitration.  In arbitration, there's no judge or jury and review is limited."  Sprint Terms at 11. Under the heading on page 12, titled "**Exceptions To Our Agreement To Arbitrate Disputes,**" the agreement states, "[e]ither of us may bring qualifying claims in small claims court.  In addition, this arbitration provision does not prevent you from filing your dispute with any federal, state or local government agency that can, if the law allows, seek relief against us on your behalf."  *Id*. at 12.

This language is ambiguous as consumers were presented with conflicting language regarding whether and under what circumstances they should file a dispute in arbitration, small claims court, or with a federal, state, or local government agency.  For example, Sprint's arbitration agreement does not define what the "qualifying claims" are that would fall under the exceptions to "our agreement to arbitrate disputes" which would permit a customer to file an action in small claims court.  Sprint's agreement also does not identify with any particularity the "federal," "state," or "local" government agencies (out of the literally hundreds that exist) that may fall under the exceptions to the agreement to arbitrate. It does not spell out at all what disputes could be filed with the unnamed agencies.  Thus, laypersons, such as the Plaintiffs in the present case, are impermissibly provided with conflicting and ambiguous contract terms as to when and where they are permitted to submit claims for resolution.

Because Sprint's arbitration agreement is ambiguous and confusing with regard to the applicable rules governing arbitration, the forum and arbitrator qualifications, each of which the

11

court in *NAACP* found to be "material parts" of an arbitration provision, there was no mutual assent among the Plaintiffs and Sprint to have created a legally binding contract, and the arbitration agreement is "too convoluted and inconsistent to be enforced." *NAACP*, 2011 WL 3273896 at *20. Sprint's arbitration agreement also fails to comply with the requirements of *NAACP*, as the provisions therein lack "sufficient clarity and consistency to be reasonably understood by the consumer who is being charged with waiving her right to litigate a dispute in court." *Id.* at *12.

Sprint's arbitration agreement is also unenforceable because it does not make any specific reference to submitting **statutory** claims to arbitration. As noted above, under New Jersey law, in the context of an arbitration agreement, "a party's waiver of statutory rights *must be clearly and unmistakably established*, and contractual language alleged to constitute a waiver will not be read expansively." *Garfinkel*, 168 N.J. at 132 (emphasis added).

Sprint's arbitration agreement completely fails to provide customers with any notice that they have agreed to waive their **statutory** rights by specifically stating that all **statutory** claims shall be submitted to arbitration. Rather, Sprint's arbitration agreement merely states, "We each agree to finally settle all disputes (as defined and subject to any specific exceptions below) by arbitration. . ." Sprint Terms at 11. This language is virtually identical to the language contained in the arbitration agreement at issue in *Rockel*, which the Appellate Division held to be insufficient as a matter of law as it requires the plaintiffs to submit their claims under New Jersey's Consumer Fraud Act to arbitration.

IV.   **SPRINT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT
      WOULD IMPOSE EXCESSIVE COSTS THAT WOULD PREVENT A
      PLAINTIFF FROM EFFECTIVELY VINDICATING UNWAIVABLE
      STATUTORY RIGHTS**

   A.   **Applicable Legal Standards**

        1.   **The Supreme Court's *Green Tree* Standard**

An agreement requiring mandatory arbitration of state or federal statutory claims is enforceable only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum."  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000).  *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (same); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (same); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (permitting arbitration of Exchange Act claims based on a finding that arbitration would be "adequate to vindicate Exchange Act rights").

*Green Tree* recognized that "large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum."  531 U.S. at 90.  Under *Green Tree*, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Id.* at 92.

The Second Circuit recently applied *Green Tree* in *In re American Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011) ("*Amex II*").  There, a putative class of merchants asserted antitrust claims against American Express, which then moved to compel arbitration under an agreement that prohibited class actions.  The merchants opposed the motion on the ground that individual arbitration would be cost-prohibitive, and submitted an affidavit from an economist, Gary L. French, Ph.D., stating that it would be economically irrational for a merchant to pursue

13

individual arbitration since "the likely costs and complexity of an expert economic study concerning liability and damages" would likely exceed any individual merchant's recovery.  *Id.* at 198.   Based on Dr. French's testimony, the Second Circuit held "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws."  *Id.* at 197.   The Second Circuit also made clear that its decision was not based on the application of any blanket rule against class action waivers:

> In this case, the record demonstrates that the size of any potential recovery by an individual plaintiff will be too small to justify the expense of bringing an individual action.  Moreover, we do not conclude here that class action waivers in arbitration agreements are per se unenforceable.  We also do not hold that they are per se unenforceable in the context of antitrust actions.  Rather, we hold that each case which presents a question of the enforceability of a class action waiver in an arbitration agreement must be considered on its own merits.

*Id.* at 199.[4]

## 2.      The California *Armendariz* Standard

In *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000), the California Supreme Court manifested  similar concerns.  *Armendariz* held that when an employer

---

[4]      Other courts have similarly applied *Green Tree* to invalidate arbitration agreements that would impose excessive costs.  *See, e.g.*, *Dale v. Comcast Corporation*, 498 F.3d 1216, 1224 (11th Cir. 2007) (applying *Green Tree* to invalidate arbitration agreement where "the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery" was too great); *Kristian v. Comcast Corp.*, 446 F.3d 25, 52 (1st Cir. 2006) (applying *Green Tree* to invalidate arbitration agreement because plaintiff would be required to bear "all of his or her own costs, including the costs of experts and attorneys"); *Shankle v. B-G Maint., Inc.,* 163 F.3d 1230, 1235 (10th Cir. 1999) (holding unenforceable an arbitral fee-splitting provision that would cost an employee between $1,875 and $5,000 to resolve his statutory claims); *Sutherland v. Ernst & Young LLP*, 768 F.Supp.2d 547, 551 (S.D.N.Y. 2011) (invalidating arbitration agreement where plaintiff's "maximum potential recovery would be too meager" to justify arbitration costs and expert fees required for individual prosecution); *In re Checking Account Overdraft Litigation*, 734 F.Supp.2d 1279, 1289 (S.D. Fla. 2010) (invalidating arbitration agreement because "[c]ompared to the potential recovery, the costs of engaging in arbitration [and expert fees] … is too great to justify individual actions by consumers"); *Caban v. J.P. Morgan Chase & Co.*, 606 F.Supp.2d 1361, 1371 (S.D. Fla. 2009) (invalidating arbitration agreement where plaintiff's "potential recovery is too small to justify the costs" of arbitration

imposes mandatory arbitration of employee claims under California's Fair Employment and Housing Act (FEHA), "the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court."   24 Cal.4th at 110-11 (italics in original).[5] *Armendariz* is based on the recognition that "certain rights – unwaivable statutory rights or fundamental rights delineated in constitution or statutory provisions – are so important in our society that their enforcement should not be chilled by the threat of expenses unique to arbitration."  *D.C. v. Harvard-Westlake School*, 176 Cal.App.4th 836, 861 (2009).  Federal and state courts in California have applied the *Armendariz* rule to a number of statutory and common law claims, including claims under California's Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL).  *See, e.g.*, *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 180 (2002) "[W]e see no reason why *Armendariz*'s 'particular scrutiny' of arbitration agreements should be confined to claims under FEHA. … [*Armendariz*] itself suggests its minimum requirements for arbitration of statutory claims apply to claims under the Consumer[s] Legal Remedies Act."); *AT&T Mobility II, LLC v. Pestano*, 2008 WL 682523, at *6 (N.D. Cal. Mar. 7, 2008) (applying *Armendariz* to invalidate arbitration agreement affecting a UCL claim).

  *Armendariz* and *Green Tree* both recognize that arbitration costs can present significant barriers to the vindication of statutory rights.  There, however, is a subtle difference between the standards they establish to determine when such costs invalidate an arbitration agreement.  *Green Tree* requires the party seeking to avoid arbitration to show that it would be "prohibitively expensive," but does not specify what types of arbitral costs would meet that standard, and leaves that issue for resolution on a case-by-case basis.  *See Green Tree*, 531 U.S. at 522 ("How

---

[5] *Armendariz* was recently reaffirmed as good law in light of *Concepcion*.  *Macintosh v. Powered, Inc.*, 2011 WL 2237938, at *4, n. 1 (Cal. Ct. App. June 8, 2011).

detailed the showing of prohibitive expense must be … is a matter we need not discuss … in this case."). *Armendariz* is more precise because it established a categorical rule that prohibits any *type* of arbitral cost the consumer would not also bear in a court action.

Although the Second Circuit applied the generic *Green Tree* standard in *Amex II*, 634 F.3d at 197, federal courts in the Ninth Circuit have consistently applied the more precise *Armendariz* categorical cost rule, particularly where claims under California statutes were at issue. *See, e.g., Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (applying *Armendariz* to invalidate an arbitration agreement "because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court").[6]

---

[6]     *See also Ingle v. Circuit City Stores*, 328 F.3d 1165, 1177 (9th Cir. 2003) (invalidating arbitration agreement that would require payment of a filing fee that "is not the '*type* of expense that the employee would be required to bear' in federal court") (italics in original); *Circuit City Stores v. Adams*, 279 F.3d 889, 893-94  (9th Cir. 2002) ("We find the arbitration agreement at issue here virtually indistinguishable from the agreement … in *Armendariz*. … The DRA also requires the employee to split the arbitrator's fees with Circuit City.  This fee allocation scheme alone would render an arbitration agreement unenforceable.") (footnote omitted); *Assaad v. American National Ins. Co.*, 2010 WL 5416841 at *6 (N.D. Cal. Dec. 23, 2010) (applying *Armendariz* to invalidate an arbitration agreement with a "cost-shifting scheme" that could put plaintiff "on the hook for substantial forum costs in the event the employer prevailed … [which] might well deter an action and chill the exercise of statutory rights"); *Jackson v. S.A.W. Entertainment Ltd.*, 629 F.Supp.2d 1018, 1031 (N.D. Cal. 2009) (applying *Armendariz* to invalidate arbitration agreement that did not "expressly provide" that defendant would "pay for all costs that are unique to arbitration"); *AT&T Mobility II, LLC v. Pestano*, 2008 WL 682523, at *6 (N.D. Cal. March 7, 2008) (applying *Armendariz* to invalidate arbitration clause in AT&T's dealer agreements where the cost-splitting provisions would improperly impede the "ability to vindicate rights under" Business & Professions Code § 17200); *Dunham v. Environmental Chemical Corp.*, 2006 WL 2374703, at *9 (N.D. Cal. Aug. 16, 2006) ("The Commercial Rules would require Dunham to pay half of the arbitrator's expenses, a fee not usually associated with litigation.   As such, the   cost-sharing provision of the Commercial Rules is clearly unconscionable under *Armendariz.*"); *ACORN v. Household International, Inc.*, 211 F.Supp.2d 1160, 1173 (N.D. Cal. 2002) ("[T]he *Armendariz* court specifically noted that the party imposing arbitration may not impose any type of cost not incident to a judicial action.   Defendants' arbitration agreement transgresses this limitation by imposing on Plaintiffs a share of the entire arbitration cost, including the cost of the arbitrator's fee."); *Horton v. California Credit Corp.*, 2009 WL 2488031, at *7 (S.D. Cal. Aug. 13, 2009) (invalidating arbitration agreement where "cost-splitting agreement imposes arbitrator's fees on Plaintiffs as a condition of access to the arbitration forum"); *Gelow v. Central Pacific Mortgage Corp.*, 560 F.Supp.2d 972, 982 (E.D.

3.      **The Third Circuit's *Blair* Standard**

In *Blair v. Scott Specialty Gases,* 283 F.3d 595 (3d Cir. 2002), the Third Circuit applied the *Green Tree* standard to analyze an arbitration agreement that required the plaintiff to pay one-half of the arbitrator's fees.  The *Blair* court recognized that "the determination of whether fee-splitting renders an agreement unenforceable must be examined on a case-by-case basis rather than through the application of a broad *per se* rule against all fee splitting.  *Id.* at 609 (citing *Bradford v. Rockwell Semiconductor System Inc.*, 238 F.3d 549 (4th Cir. 2001)).  This is because it would be "inconsistent with *Green Tree*" to hold that the "mere existence of a fee-splitting provision" in an arbitration agreement would satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs.  *Blair,* 283 F.3d at 610.  Although the *Blair* court declined to establish a "per se rule," it recognized that *Green Tree* "established the right of a claimant to invoke discovery procedures in the pre-arbitration proceeding in order to assist the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs."  *Id.*

The *Blair* court held: "Limited discovery into the rates charged by the AAA and the appropriate length of similar arbitration proceedings should adequately establish the costs of arbitration, and give Blair the opportunity to prove, as required under *Green Tree*, that resort to arbitration would deny her a forum to vindicate her statutory rights."  *Id.* at 610.

Ultimately, the *Blair* court considered the evidence submitted by the plaintiff, which consisted of only one vague and self-serving affidavit, and concluded that she did not meet her threshold burden of presenting evidence of the "likelihood" of incurring "prohibitive" costs.  *Id.* at 610.  However, because the plaintiff offered some evidence of prohibitive costs, the court

---

Cal. 2008) (applying *Armendariz* to invalidate an arbitration agreement that "requires the employee to pay half of the fees and expenses of the arbitrator if the employee has brought a claim against the employer based on the contract or common law").

17

remanded the case with instructions that the trial court conduct discovery into the "likelihood" the plaintiff would incur "prohibitive" costs. *Id*. at 611.

The record here, as detailed in section IV. B. and C., establishes precisely what the *Blair* court held is necessary evidence demonstrating that there is a likelihood of incurring prohibitive costs, which renders the fee splitting agreement unenforceable.

**B.** **Sprint's Arbitration Agreement Violates The *Armendariz* Rule And The *Blair* Rule By Requiring A Plaintiff To Bear Arbitral Expenses He/She Would Not Bear In A Court Action**

Sprint's arbitration agreement states in relevant part that "[Sprint] will cover any arbitration administrative or filing fees above: (a) $25 if you are seeking less than $1,000 from us; or (b) the equivalent court filing fees for a court action in the appropriate jurisdiction if you are seeking $1,000 or more from us." Sprint Terms at 12. At first blush, it would appear that arbitration might only cost $25 or a few hundred dollars under these terms. But in reality, the terms providing for an almost cost free arbitration are largely illusory as a result of the Sprint's inclusion of the following clause:

> We each are **responsible for our respective costs** relating to counsel, experts, and witnesses, as well as any other costs **relating to the arbitration**.

*Id.* at 12 (emphasis added). The fact that a claimant is responsible for costs relating to arbitration is undisputed. Sprint specifically admits that "[b]oth parties are responsible for the costs of the arbitration…" *See* Sprint's Motion to Compel Bilateral Arbitration at 11 (Docket Entry 37-1).

Moreover, unlike in *Blair*, Plaintiffs here have submitted more than sufficient evidence to establish that Sprint's fee-sharing rule would deny them a forum to vindicate their unwaivable statutory rights. As the *Blair* court suggested, Plaintiffs have submitted rates charged by the AAA and invoices from a similar matter that establish the length and costs associated with

18

arbitrating Plaintiffs claims.  *See* Bursor Decl. Exh. 1 (arbitrator invoices billing $101,150 in a comparable case).

     **C.**    **Sprint's Arbitration Agreement Violates The *Green Tree* Rule By Making It "Prohibitively Expensive" For A Plaintiff To Arbitrate His/Her Claim Individually**

Sprint's arbitration agreement also violates the *Green Tree* rule because individual arbitration of the claims in this action would cost a Plaintiff approximately $150,575.00 to $200,575.00 in arbitrator compensation and expert fees, summarized in the table below.

**Expenses To Pursue Individual Arbitration Of Claims Asserted In IN RE SPRINT PREMIUM DATA PLAN MARKETING AND SALES PRACTICES LITIGATION (Excluding Attorneys' Fees & Expenses)**

| Expense Category | Amount | Plaintiffs' Share | Plaintiffs' Expense | Reference |
|---|---|---|---|---|
| Arbitrator Compensation | $101,150.00 | 50.00% | $50,575.00 | ¶¶ 9-14 |
| Expert Expense For Initial Analysis | $50,000.00 to $75,000.00 | 100.00% | $50,000.00 to $75,000.00 | ¶¶ 15-21 |
| Expert Fees For Additional Analysis And Testimony | $50,000.00 to $75,000.00 | 100.00% | $50,000.00 to $75,000.00 | ¶¶ 22-27 |
| Total | | | **$150,575.00 to $200,575.00** | |

These costs include the arbitrator's compensation that a Plaintiff would have to pay under Sprint's arbitration agreement.  Sprint Terms at 12.  Arbitrator compensation was estimated based on actual arbitrator invoices from a comparable AAA proceeding.  *See* Bursor Decl. Exh. 1 (arbitrator invoices billing $101,150 in a comparable case).  In addition, Plaintiffs' counsel estimates that a Plaintiff would incur attorneys' fees of approximately $1.1 million, plus an additional $40,000 in attorneys' expenses, based on the actual attorneys' fees incurred in a comparable AAA arbitration.  *See* Bursor Decl. ¶¶ 28-30.

It would be economically irrational for any Plaintiff to advance these costs to dispute a $10 monthly charge, with the potential total recovery totaling less than $200. In *Patterson v. ITT Consumer Financial Corp.*, 14 Cal.App.4th 1659 (1993), for example, the court recognized that "[i]n a dispute over a loan of $2,000 it would scarcely make sense to spend a minimum of $850 just to obtain a participatory hearing." *Id.* at 1666. The ratio of arbitral costs ($150,000-$200,000) to potential recovery ($200) is even more skewed here. These costs are "prohibitively expensive" in violation of *Green Tree*, and they would preclude a Plaintiff from vindicating his/her statutory rights. *See* Bursor and Plaintiffs' Decl.

### D.     Concepcion Does Not Affect The Analysis Under *Green Tree*, *Armendariz*, and *Blair*

The Supreme Court's recent decision in *Concepcion* does not address the *Green Tree, Armendariz,* or *Blair* rules, nor does it address whether excessive or unique arbitral costs would prevent a litigant from effectively vindicating statutory rights. These issues were not presented in *Concepcion*.

*Concepcion* concerned a different issue: whether California's *Discover Bank* rule was preempted by the Federal Arbitration Act (FAA). The *Discover Bank* rule was characterized as a blanket rule that prohibited class action waivers "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Concepcion*, 131 S.Ct. at 1746 (quoting *Discover Bank v. Superior Court*, 36 Cal.4th 148, 162 (2005)). The precise holding of *Concepcion* was that the *Discover Bank* rule was preempted by the FAA:

> Because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61

20

S.Ct. 399, 85 L .Ed. 581 (1941), California's *Discover Bank* rule is preempted by
the FAA.

*Concepcion*, 131 S.Ct. at 1753.

The Supreme Court's decision in *Concepcion* did not address the *Green Tree*,
*Armendariz*, or *Blair* doctrines for at least four reasons.  *First*, AT&T's Petition for Writ of
*Certiorari* in *Concepcion* expressly eliminated these issues by framing the question presented as
follows:

> Whether the Federal Arbitration Act preempts States from conditioning the
> enforcement of an arbitration agreement on the availability of particular
> procedures – here, class-wide arbitration – **when those procedures are not
> necessary to ensure that the parties to the arbitration agreement are able to
> vindicate their claims.**

*AT&T Mobility LLC v. Concepcion*, Petition for Writ of Certiorari at i (Bursor Decl. Exh. 2)
(emphasis added).  By framing the question that way, AT&T expressly avoided any discussion of
the *Green Tree*, *Armendariz*, and *Blair* doctrines.  Further, there was no reference to those
doctrines anywhere in the opinion of the Court, or in the concurring and dissenting opinions.

*Second*, the Supreme Court in *Concepcion* noted that the Concepcions claim would "most
unlikely go unresolved" because "the arbitration agreement provided substantial inducements for
the consumer" such as AT&T will pay claimants a minimum of $7,500 and twice their attorney's
fees if they obtain an arbitration award greater than AT&T's last settlement offer.  *Concepcion*,
131 S.Ct. at 1753.  Sprint's arbitration agreement contains no similar inducements.  Sprint Terms
at 12.  Additionally, Sprint's arbitration agreement specifically requires a claimant to pay for half
the arbitrator fees.  *Compare Concepcion*, 131 S.Ct. at 1745 ("AT&T must pay *all* costs for
nonfrivolous claims") *with* Sprint Terms at 11-13.  Moreover, as Sprint's arbitration agreement
has no rules of arbitration or even an arbitration forum, a consumer is forced to incur the
additional expense of having to hire a lawyer and appear in court simply to get an arbitrator

21

appointed.  *Id.* at 12 ("We will agree on the arbitrator, and if we cannot agree, then the arbitrator will be appointed by the court as approved by the FAA.").

*Third*, the Concepcions' claim was quite different from Plaintiffs' claims.  The Concepcions claimed AT&T's offer of a free phone was fraudulent because AT&T charged them $30.22 sales tax on the retail value of the free phone.  The Concepcions could readily understand that they were charged sales tax on their free phone, and could discover and assert their claims without the assistance of an expert.  Here, Plaintiffs' claims could not be presented in any forum without substantial expert testing and analysis.  *See* Weir Decl. ¶¶ 4 and 6.

*Fourth*, there was no evidentiary record in *Concepcion* about the potential costs of arbitration.  Indeed, there was no evidentiary record at all at the trial court level.  The District Court simply applied the *Discover Bank* rule to invalidate the arbitration agreement based on the presence of a class action waiver, despite concluding that the arbitration process for the Concepcions would have been "'quick, easy to use' and likely to 'promp[t] full or ... even excess payment to the customer *without* the need to arbitrate or litigate.'"  *Concepcion*, 131 S.Ct. at 1745 (quoting the District Court's findings).  The evidentiary record here shows that is not the case for Plaintiffs.  *See* Bursor Decl. ¶¶ 7-30 and Plaintiffs' Decl. ¶¶ 2-6.

For these reasons, *Concepcion* is distinguishable on its facts, on the claim asserted, and on the evidentiary record presented at the trial court level.  In addition, because of its unique facts, *Concepcion* does not address whether a claimant subject to extensive arbitral costs could effectively vindicate his statutory rights as required under *Armendariz*, *Blair*, and *Green Tree*.  *Concepcion* did not overrule those longstanding doctrines – nor even mention them.

22

E.     **Sprint's Legally Defective Arbitration Agreement Cannot Be Resuscitated By Offering to Change It**

Plaintiffs anticipate that Sprint will now offer to pay all filing fees, arbitration costs, and arbitration fees.  However, New Jersey law does not permit an after-the-fact resuscitation of an unenforceable or unconscionable contract.  In *Adamson v. Foulke Management Corp.*, 2009 WL 5174642, at *8-9 (D.N.J. December 18, 2009), the District Court included a detailed review of cases as to whether an after-the-fact offer to pay can resuscitate an unconscionable contract.  It concludes, rather bluntly, that the rule in New Jersey is that these offers are irrelevant.  *Id.* at 8-10.  "Though there has been some confusion as to whether the Court may look to a defendant's offer to pay costs in determining whether a particular cost provision is unconscionable and unenforceable, due in large part to what appears to be a stray comment by the Third Circuit, it is now clear that the Court may not consider an offer to pay costs in making this determination... The Court cannot consider a Defendants' after-the-fact offer to pay costs in determining whether an arbitration agreement is unconscionable."  *Id.* at *8-9.  Therefore, any offer by Sprint to now change its agreement or pay the full costs of arbitration is irrelevant and should not be considered by this Court.  *Delta Funding Corp. v. Harris,* 189 N.J. 28, 43 (2006) ("Contract unconscionability must be decided based on the contract as written because the language of the contract is what consumers must consider when assessing whether to pursue" a claim); *see also Parilla v. IAP Worldwide*, 368 F.3d 269, 278-79 (3d Cir. 2004).

V.     **SPRINT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT IS UNCONSCIONABLE**

Unconscionability is specifically recognized as a ground for refusing to enforce an arbitration agreement.  *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).  An unconscionability analysis can be performed without contravening the FAA.  *Homa v. American Express Co.,* 558 F.3d 225, 229 (3d Cir. 2009); *see also Homa v. American Express Co.,* 2010

WL 4116481 at *1 (D.N.J. 2010).  *Concepcion* did not eliminate long-standing U.S. Supreme Court case law on challenges to an arbitration clause where there is fraud, mutual mistake, duress or unconscionability.   "Fraud, duress, and unconscionability may be applied to invalidate arbitration agreements without contravening § 2."  *Concepcion*, 131 S.Ct. at 1755, FN*.

Unconscionability is applied to all types of contracts under New Jersey law; it is not unique to arbitration agreements.  *See Copeland v. Nixon*, 396 Fed. Appx. 784 (3d Cir. 2010), citing *Saxon Const. & Management Corp. v. Masterclean, Inc.*, 273 N.J.Super. 231, 236 (App.Div. 1994) (noting New Jersey courts "may refuse to enforce contracts that are unconscionable").  "When a party to an arbitration agreement argues that the agreement is unconscionable and unenforceable, that claim is decided based on the same state law principles that apply to contracts generally."  *Delta Funding Corp.*, 189 N.J. at 39.

The standards articulated in *Green Tree*, *Armendariz*, and *Blair* preclude enforcement of arbitration agreements that would prevent a litigant from effectively vindicating his claims in an arbitral forum.  Those standards do not depend on any finding of unconscionability. Nevertheless, courts sometimes shoehorn the *Green Tree / Armendariz / Blair* standards into an unconscionability analysis.

California has codified the common law doctrine of unconscionability at Civil Code § 1670.5(a), which states that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract …."  Section 1670.5(b) provides that "[w]hen it is claimed that … the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  New Jersey has also codified the common law doctrine of unconscionability at N.J.S.A.  56:8-2, which states that "[t]he act, use or employment by any person of any

unconscionable  commercial  practice,  deception,  fraud,  false  pretense,  false  promise,
misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . .
whether or not any person has in fact been misled, deceived or damaged thereby, is declared to
be an unlawful practice."[7]

Both procedural and substantive unconscionability must be present for a court to refuse to
enforce a contract.  *Armendariz*, 24 Cal.4th at 114; *Muhammad v. County Bank of Rehoboth
Beach,* 189 N.J. 1, 15 (2006).  "But they need not be present in the same degree.  Essentially a
sliding scale is invoked which disregards the regularity of the procedural process of the contract
formation, that creates the terms, in proportion to the greater harshness or unreasonableness of
the substantive terms themselves.  In other words, the more substantively oppressive the contract
term, the less evidence of procedural unconscionability is required to come to the conclusion that
the term is unenforceable, and vice versa."  *Armandariz,* 24 Cal.4th at 114 (internal quotation
marks omitted).

A.      **Procedural Unconscionability**

Procedural unconscionability concerns the manner in which the contract was negotiated
and the circumstances of the parties at that time.  *Morris v. Redwood Empire Bancorp*, 128
Cal.App.4th 1305, 1319 (2005); *Harris v. Greentree Financial Corp.,* 183 F.3d 173 (3d Cir.
1999). It focuses on factors of oppression and surprise.  *Id.*  The oppression component arises
from an inequality of bargaining power of the parties to the contract and an absence of real
negotiation or a meaningful choice on the part of the weaker party.  *Id.*

---

[7]      Although *Concepcion* held the *Discover Bank* rule was preempted by federal law, general
state law doctrine relating to unconscionability remains applicable to arbitration agreements.  *See
Mission Viejo Emergency Medical Associates v. Beta Healthcare Group*, 2011 WL 2565363, at
*7 n.4 (Cal. Ct. App. June 29, 2011) ("Defendants appear to argue that *AT&T* [*v. Concepcion*]
essentially preempts all California law relating to unconscionability.  We disagree, as the case
simply does not go that far.").

25

The procedural unconscionability analysis usually begins and ends with a determination that a contract is one of adhesion.  A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal.4th at 113; *Vilches v. The Travelers Co., Inc.,* 2011 U.S. App. Lexis 2551 at *14 (3d Cir. 2011). There is no question that the Sprint Terms of Service is a contract of adhesion.[8]  That alone is sufficient to establish procedural unconscionability.  *See, e.g.*, *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."); *see also Homa v. American Express Co.,* 558 F.3d at 231.

A procedural unconscionability analysis may also include consideration of the factors of surprise and oppression.  *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1571 (2009); *Muhammad,* 189 N.J. at 16 n 3.  "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party."  *Id.*  "While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not."  *Parada,* 176 Cal.App.4th at 1571.  These additional factors of procedural unconscionability are present here because a Sprint customer would not expect to be required to pay $50,575 in arbitrator fees, $100,000 in expert fees and not even know what rules will govern an arbitration until <u>after</u> he waives all of his rights to go to Court.

---

[8]     The process by which Sprint contends it made an agreement to arbitrate with Plaintiffs was not a simple one.  This is best illustrated by the fact that Sprint spent 6 pages of their 33-page motion to explain how this particular contract of adhesion was made.  *See* Sprint's Motion to Compel Bilateral Arbitration at 4-10 (Docket No. 37-1).  To provide evidentiary support for the formation of this particular contract of adhesion, Sprint submitted a 10-page declaration with 147 pages to show the "multiple sources" that contain Sprint's Terms.  *See* Declaration of Stephanie Miller (Docket Entry 37-5) and exhibits referenced therewith (Docket Entries 37-6, 37-7, 37-8, and 37-9).

### B.    Substantive Unconscionability

A provision is substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms.  *Morris*, 128 Cal.App.4th at 1322; *Estate of Cohen v. Booth Computers,* 22 A.3d 1991, 1006 (N.J. App. Div. 2011) ("Substantive unconscionability simply suggests an exchange of obligations so one sided as to shock the Court's conscience").  Substantive unconscionability may be shown if the disputed contract provision falls outside the non-drafting party's reasonable expectations.  Here, there are at least three provisions that render Sprint's arbitration agreement substantively unconscionable.  *First* and foremost, the omission and uncertainty of the most essential term – the arbitral rules.  *See* Part IV, above.  *Second*, the excessive arbitral fees.  *See* Part V, above. And *third*, the prohibition on class arbitration in combination with arbitral costs that would preclude Plaintiffs from seeking to assert their claims.

### C.    The Unenforceable Arbitration Provisions Are Not Severable

Civil Code § 1670.5(a) requires consideration of whether the unconscionable provisions are severable, or if the court "may so limit the application of any unconscionable clause as to avoid any unconscionable result."  The unenforceable provisions here are not severable from the remainder of the arbitration clause because the terms of the agreement specifically preclude severance.  Sprint Terms at 12 ("**If for any reason any court or arbitrator holds that this restriction is unconscionable or unenforceable, then our agreement to arbitrate doesn't apply and the dispute must be brought in court.**") (emphasis in the original).

## VI.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF UNDER THE CLRA AND UCL ARE NOT ARBITRABLE

Plaintiffs seek injunctive relief under the CLRA and UCL.  (Complaint at ¶ 99(a)). Those claims are not arbitrable.  *See Broughton v. Cigna Healthplans of California,* 21 Cal.4th

27

1066, 1079-80 (1999) (holding claims for injunctive relief brought under the CLRA are not

subject to arbitration), and *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 316 (2003)

(holding claims for injunctive relief brought under the UCL are not subject to arbitration).

   As the California Supreme Court explained, "the evident purpose of the injunctive relief

provision of the CLRA is … to [protect] the general public in danger of being victimized by the

same deceptive practices as the plaintiff suffered." *Broughton*, 21 Cal.4th at 1080.  Mandatory

arbitration of injunctive relief claims would frustrate that purpose.

> If an arbitrator issued an injunction under the CLRA prohibiting a certain
> deceptive practice, and if that injunction were imperfectly enforced, another
> consumer plaintiff also seeking to enjoin the practice would have to relitigate it.

*Id.* at 1081.

   Sprint's arbitration agreement was specifically designed to ensure this problem would

arise.  Thus it includes an implicit restriction on the ability of an arbitrator to grant injunctive

relief:

> We each agree that any arbitration will be solely between you and us (not brought
> on behalf of or together with another individual's claim).

Sprint Terms at 12.  Thus, if Plaintiffs prove that Sprint is systematically double-billing or over-

billing millions of customers for "unlimited" data, Sprint would argue the arbitrator is powerless

to enjoin such unlawful billing with respect to anyone other than Plaintiffs.  Under *Broughton*

and *Cruz*, Plaintiffs' claims for injunctive relief are not arbitrable.[9]  Even if they were arbitrable,

the provision purporting to limit the arbitrator's ability to grant injunctive relief would invalidate

the agreement as an unlawful waiver.  *See* Civil Code §1751 ("Any waiver by a consumer of the

provisions of this title is contrary to public policy and shall be unenforceable and void.").

---

[9]    The California Court of Appeal recently confirmed the continuing viability of *Broughton*
and *Cruz* post-*Concepcion*.  *See Brown v. Ralphs Grocery Co.*, 2011 WL 2685959 at *5 (Cal. Ct.
App. July 12, 2011) (distinguishing *Concepcion* on the ground that "*Broughton* and *Cruz* dealt
with arbitrability and not with class and representative action waivers").

## VII.  SPRINT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT IS CONTRARY TO THE FEDERAL COMMUNICATIONS ACT

As set forth in Count I of Plaintiff's Second Consolidated Amended Complaint, Sprint is a common carrier engaged in interstate or foreign communication by wire or radio, and is therefore subject to the common carrier regulation set forth at 47 U.S.C. § 207, *et seq.*  The Federal Communications Act, 47 U.S.C. § 201(b) provides:

> All charges, practices, classifications, and regulations for an in connection with … communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful.

Because the arbitration clause contained in Sprint's Terms is unconscionable and unreasonable for the reasons fully set forth above, logic dictates that the arbitration clause is also unjust and unreasonable under 47 U.S.C. § 201(b), which requires that same be declared unlawful.

Section 202(a)  further provides:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class or persons, or locality to any undue or unreasonable prejudice or disadvantage.

Unreasonable discrimination can come in the form of a lower price for equivalent service or enhanced service for the same price.  *Competitive Telecommunications Assn. v. FCC*, 998 F.2d 1058, 1062 (D.C.Cir. 1993).  There is a three-part test to determine whether a carrier had engaged in price discrimination.  First, the plaintiff must prove that the services are "like".  Second, the plaintiff must prove that the services are provided under different terms and conditions.  If the plaintiff satisfies the first two conditions, the burden shifts to the defendant to

29

justify the difference as reasonable. *Union Telephone Co., v. Qwest Corp.*, 495 F.3d 1187, 1195 (10th Cir. 2007).

Sprint's class action waiver acts contrary to § 202 because it allows, if not forces, Sprint to discriminate against identically situated customers. There is no dispute that all customers with unlimited data plans receive, or at least contract for, identical service. There is also no dispute that Sprint imposes a $10 premium data charge to all customers with Unlimited Data Plans. Although the $10 premium data charge is an unreasonable and unlawful charge, it is at least not applied in a discriminatory manner. However, if any individual customer went to arbitration and successfully challenged the premium data charge, or if Sprint were to settle that customer's challenge to the premium data charge, that customer would receive an "undue or unreasonable preference or advantage" over other identically situated customers for no reason other than he or she complained. That is facially unreasonable discrimination contrary to § 202. On the other hand, any challenged to the premium data charge on a class basis, which Sprint is seeking to prohibit, would resolve issues related to the premium data charge equally among all affected persons, not on a discriminatory basis, benefitting only those customers who put in the time and effort to complain.

## VIII. CONCLUSION

For the foregoing reasons, Sprint's motion to compel arbitration should be denied based on the current evidentiary record. In the alternative, if the Court believes the current evidentiary record is insufficient, Plaintiffs respectfully request a reasonable opportunity for discovery and an evidentiary hearing to provide further evidence in opposition to this motion. *See Blair,* 283 F.3d at 608-609 (recognizing that *Green Tree* "established the right of a claimant to invoke discovery procedures in the pre-arbitration proceeding in order to assist the claimant in meeting her burden of showing the likelihood of bearing prohibitive costs.").

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs

By:   /s/ James E. Cecchi
        JAMES E. CECCHI

Dated:  August 16, 2011

Scott A. Bursor
Joseph I. Marchese
BURSOR & FISHER, P.A.
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 989-9113

L. Timothy Fisher
BURSOR & FISHER, P.A.
2121 North California Boulevard, Suite
1010
Walnut Creek, CA 94596
(925) 482-1515

Barry L. Davis
Aaron P. Davis
THORNTON, DAVIS & FEIN, P.A.
Brickell BayView Centre, Suite 2900
80 SW Eighth Street
Miami, Florida  33130
(305) 446-2646

Jeffrey A. Leon
Paul Y. Cho
Julie D. Miller
Richard J. Burke
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Adam J. Levitt
Edmund S. Aronowitz
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111

Chicago, Illinois  60603
(312) 984-0000

Fred T. Isquith
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
270 Madison Avenue
New York, New York  10016
(212) 545-4600

Marc G. Reich
REICH RADCLIFFE & KUTTLER LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA  92660
(949) 975-0512

C. Donald Amamgbo
AMAMGBO & ASSOCIATES
7901 Oakport Street, Suite 4900
Oakland, California 94621
(510) 615-6025

Patrick J. Perrotti
Nicole T. Fiorelli
Grant J. Keating
DWORKEN & BERNSTEIN, CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391

Robert D. Shoecraft
Devin T. Shoecraft
SHOECRAFT BURTON, LLP
1230 Columbus Street, Suite 1140
San Diego, California 92101
(619) 794-2280