James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

 (additional counsel on signature page)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SPRINT PREMIUM DATA PLAN MARKETING AND SALES PRACTICES LITIGATION | Master Case No. 10-6334 (SDW)<br>MDL No. 2228<br><br>**DECLARATION OF<br>SCOTT A. BURSOR IN OPPOSITION<br>TO SPRINT'S MOTION TO COMPEL<br>BILATERAL ARBITRATION AND<br><u>DISMISS OR STAY ALL ACTIONS</u>** |

I, Scott A. Bursor, declare:

1. I am an attorney at law licensed to practice in New York, California, and Florida, and I am a partner in Bursor & Fisher, P.A., co-counsel of record for Plaintiffs. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the invoices for arbitrator compensation in *Brown v. Cellco Partnership d/b/a Verizon Wireless*, AAA Case No. 11 494 01274 05, which were used to estimate the likely cost of arbitrator compensation for Plaintiffs' claims.

3. Attached hereto as **Exhibit 2** is a true and correct copy of an excerpt from AT&T's Petition for Writ of Certiorari in *AT&T Mobility LLC v. Concepcion*, Supreme Court Docket No. 09-983, dated January 25, 2010.

**Uncertain Content and Omitted Essential Terms Of The Arbitration Agreement**

4. Sprint's arbitration agreement contained in its "Service Agreement: General Terms and Conditions of Service" states in relevant part that "[t]he arbitration will be governed by the arbitration rules selected by the Arbitrator." Sprint Terms and Conditions of Service at 12 (Miller Decl. Exh. A, Docket No. 37-6).

5. In the event Plaintiffs seek arbitration of their individual claims, it is impossible for them (or Sprint) to know what arbitration rules will be selected and applied by the arbitrator, or even what arbitration administrator will be used. This is significant because there are numerous arbitration administrators (American Arbitration Association, "AAA"; Judicial Arbitration and Mediation Service. "JAMS"; National Arbitration Forum, "NAF"; individual arbitrators, etc…) that could preside over Plaintiffs' claims and an infinite number of variations in the arbitral rules that could be "selected by the Arbitrator."

6. Sprint's arbitration agreement also provides that, "[w]e will agree on the arbitrator, and if we cannot agree, then the arbitrator will be appointed by the Court as provided by the FAA." Sprint Terms and Conditions of Service at 12 (Miller Declaration Exhibit "A", Docket No. 37-6).

**The Real Costs To Arbitrate Plaintiffs' Claims**

7. Plaintiffs allege that Sprint double-bills or over-bills wireless customers who had already subscribed to an "unlimited" data plan at a fixed monthly price, by charging those customers an additional $10.00 per month per line "Premium Data Add-On" fee for the same

unlimited data service they had already paid for, at a contractually agreed price that did not include these charges. *See* 2nd Consolidated Am. Complaint ¶ 2 (Docket No. 35). Plaintiffs seek to recover that $10 per month per line charge, and an injunction requiring Sprint to "cease the improper billing of 'Premium Data' charges." *See id.* ¶¶ 76(b), 82(b), 86(b), 99(a), and 108(c). It would cost each of the twelve individual Plaintiffs approximately $150,575.00 to $200,575.00, exclusive of attorneys' fees, to pursue those claims in an individual arbitration. Those costs are broken down as follows:

**Expenses To Pursue Individual Arbitration Of Claims Asserted in IN RE SPRINT PREMIUM DATA PLAN MARKETING AND SALES PRACTICES LITIGATION (Excluding Attorneys' Fees & Expenses)**

| Expense Category | Amount | Plaintiffs' Share | Plaintiffs' Expense | Reference |
|---|---|---|---|---|
| Arbitrator Compensation | $101,150.00 | 50.00% | $50,575.00 | ¶¶ 9-14 |
| Expert Expense For Initial Study | $50,000.00 to $75,000.00 | 100.00% | $50,000.00 to $75,000.00 | ¶¶ 15-21 |
| Expert Fees For Additional Analysis And Testimony | $50,000.00 to $75,000.00 | 100.00% | $50,000.00 to $75,000.00 | ¶¶ 22-27 |
| Total | | | $150,575.00 to $200,575.00 | |

8.   In addition to the foregoing expenses, an individual arbitration of Plaintiffs' claims would involve attorneys' fees of approximately $1.1 million, plus an additional $40,000 in attorneys' expenses. *See* ¶¶ 28-30, below.

**Sprint's General Terms and Conditions of Service Would Require Plaintiffs To Bear Expenses For His Own Witnesses And Half Of The Arbitrators' Fees**

9.   Sprint's arbitration agreement contained in its "Service Agreement: General Terms and Conditions of Service" states in relevant part that "**[Sprint] will cover any arbitration administrative or filing fees** above: (a) $25 if you are seeking less than $1,000 from us; or (b) the equivalent court filing fees for a court action in the appropriate jurisdiction if

3

you are seeking $1,000 or more from us." Sprint Terms and Conditions of Service at 12 (Miller Decl. Exh. A, Docket No. 37-6) (emphasis added).

10. At first blush, it would appear that arbitration might only cost $25 or a couple hundred dollars in court filing fees under these terms. But in reality, the terms providing for an almost cost-free arbitration are largely illusory as a result of Sprint's inclusion of the following clause:

> "We each are **responsible for our respective costs** relating to counsel, experts, and witnesses, as well **as any other costs relating to the arbitration**."

*Id.* (emphasis added).

11. The fact that a claimant, under Sprint's arbitration agreement, is responsible for costs relating to arbitration is undisputed. Sprint specifically admits that "[b]oth parties are responsible for the costs of the arbitration…" *See* Sprint's Motion to Compel Bilateral Arbitration at 11 (Docket No. 37-1).

12. The exact cost relating to arbitration depends on the "rules" selected by the arbitrator, his/her hourly rate, the number of hours the arbitrator works on the case, and other factors. These figures cannot be forecast with precision. They can, however, be estimated based on experience in similar cases.

13. The most analogous case for estimating the cost of arbitrator compensation is *Brown v. Cellco Partnership d/b/a Verizon Wireless*, AAA Case No. 11 494 01274 05 (hereafter, "*Brown*"). I was lead counsel for the claimants in *Brown*, who asserted claims challenging Verizon Wireless' early termination fees as unlawful contractual penalties. *Brown* was filed in June 2005 and was settled in June 2008. *Brown* is comparable to Plaintiffs' case because both involve disputes over the legality of charges billed by a wireless carrier, and both involve issues

4

requiring expert testimony. Since *Brown* was a class arbitration, it had more complex procedural issues than I would anticipate here. But the factual evidence concerning early termination fees in *Brown* was relatively straightforward. Plaintiffs' case is more technically complex, involving issues related to the assessment of download speeds, bandwidth consumption and a comparison of phone models and service levels. I would expect an arbitrator would be required to spend roughly the same amount of time on Plaintiffs' case as was required in *Brown*.

14. Eugene I. Farber was appointed as the arbitrator in *Brown*. Mr. Farber's services were billed at $350 an hour. Arbitrator compensation accrues not only for in-hearing time, but also for "study" time. These hourly charges can become quite hefty when time must be expended on discovery disputes, motion practice, and scheduling conferences. Unlike federal judges, arbitrators do not have the benefit of law clerks to assist with research, preparation for hearings, and drafting of opinions and orders. Thus Mr. Farber, like most arbitrators, did this work himself. True and correct copies of Arbitrator Farber's billing invoices are attached hereto as **Exhibit 1**. From September 30, 2005 through August 22, 2007, Arbitrator Farber billed $101,150 for 289 hours of work on *Brown*. I would expect an arbitrator would bill about the same amount on Plaintiffs' case. This estimate is conservative because hourly rates have certainly increased in the past six years.

**Sprint's General Terms and Conditions of Service Would Require Plaintiffs To Bear Expert Fees For Testing and Analysis**

15. Plaintiffs allege that Sprint double-bills or over-bills Plaintiffs who had already subscribed to an "unlimited" data plan at a fixed monthly price, by charging those customers an additional $10.00 per month per line "Premium Data Add-On" fee for the same unlimited data service they had already paid for, at a contractually agreed price that did not include these charges. *See* 2nd Consolidated Am. Complaint ¶ 2 (Docket No. 35).

5

16. Plaintiffs further allege that the "Premium Data Add-On" fee is "not a charge for 4G service" and "not a charge for premium data content." *See* 2nd Consolidated Am. Complaint ¶¶ 7-8 (Docket No. 35). Instead, the "Premium Data Add-On" fee is a "made-up term that Sprint created to disguise the fact that it was simply charging an additional fee for data service for which customers had already paid, and which Sprint was already obligated to provide, under existing contracts for Unlimited Data Plans." *See id*. ¶ 10.

17. My law firm conducted an extensive presuit investigation that included correspondence with at least 436 Sprint customers regarding the double-billing or over-billing described in the complaint and review of thousands of pages of bills, contracts, and cellphone data plans.

18. In order to further substantiate these claims, Plaintiffs would need to retain an expert in telecommunications and economics and pay for a "premium data study." The methodology of that study is described in the Declaration of Colin B. Weir, submitted herewith.

19. Mr. Weir is an expert in telecommunications and economics. *See* Weir Decl. ¶ 1. According to Mr. Weir, the following would need to be accomplished as part of an initial study to scientifically substantiate Plaintiffs' claims:

   a. Review the claimant's wireless bills pre- and post-commencement of the "premium data charge";

   b. Review the claimant's contract and other associated documentation concerning the terms and conditions for service relevant to the provision of the unlimited data service;

   c. Review Sprint's publicly available documentation, terms and conditions of service, and other associated documents;

d. Review Sprint's available rate plans, pricing, and offers;

e. Subscribe to Sprint unlimited data service on at least two handsets for purposes of comparison testing

   i. One EPIC or EVO

   ii. At least one other smartphone with an unlimited data plan as a comparison;

f. Build and configure a testing environment capable of assessing download speeds, bandwidth consumption and online experience to allow for comparison of phone models and service levels;

g. Examine the handsets to determine whether the EVO/EPIC provides additional carrier-specific/provided content, products or services above and beyond what Sprint normally includes in its unlimited data bundle

   i. Crosscheck with Sprint's terms and conditions;

h. Determine, in the controlled setting described above, whether the EVO/EPIC provided an "enhanced" data experience in any way;

i. Determine if the "premium data charge" was a charge for 4G service;

   i. Review Sprint's available 4G data plans, and any relevant contracts, terms and conditions

   ii. Research Sprint's rollout and availability of 4G service

j. Review Sprint's, its lawyers, and/or its experts response to any such claim and research the validity of any such response;

k. Draft a report of findings, including methodology and conclusions.

Weir Decl. ¶ 5.

20. Mr. Weir reports that he has participated in numerous cases involving telecommunications providers and specifically wireless carriers. Weir Decl. ¶ 8. He estimates that "a claimant filing an arbitration with similar claims as in the instant matter, would spend, at a minimum, between $50,000-$75,000 as part of a initial study simply to scientifically substantiate their claim." *Id.*

21. Given the relatively small amount at stake for an individual consumer, no one would have an economically rational reason to expend the resources necessary to do the testing and investigation necessary to further substantiate these claims.

### Sprint's General Terms and Conditions of Service Would Require Plaintiffs To Bear Expert Fees For Additional Testing, Analysis, And Testimony In Arbitration

22. Plaintiffs' case involves complex technical issues related to the assessment of data speeds, bandwidth consumption and on-line experience across a wireless network and analyzing the composition of data. Both sides will have to present written expert testimony, will likely have to make their experts available for deposition, and to testify live at an arbitration hearing. Each of these things was required in the *Brown* arbitration.

23. Mr. Weir reports that he would anticipate additional work associated with preparing the case for arbitration and the ongoing arbitration of the case, including but not limited to:

   a. Assist counsel with discovery including attendance at discovery depositions of Sprint employees as well as depositions of persons most knowledgeable with respect to the specific details of the "premium data charge";

   b. Respond to discovery, including providing deposition testimony, as propounded by respondent;

      c. Review and analyze responsive expert and non-expert reports and/or testimony as proffered by respondent, including assistance with discovery thereon including attendance at deposition(s) of respondent's experts and other witnesses and, as required, preparation of a rebuttal report responsive to respondent's rebuttal evidence;

      d. Attend arbitration hearings or proceedings as required, including standing for cross-examination by defendant;

      e. Provide such other research and analysis as may be requested by counsel.

Weir Decl. ¶ 7.

24.    Mr. Weir estimates that "[a] claimant would likely spend at least [an additional $50,000-$75,000] on expert fees to prepare the case for the arbitration process[,] … [which] would bring total expenditures to between $100,000 and $140,000.00." *Id.* ¶ 8.

25.    Mr. Weir further estimates that "[s]eeing the case all the way through the arbitration process to full hearing on the merits would add additional costs." *Id.*

26.    Under Sprint's arbitration agreement, an individual Plaintiff would be required to bear these expenses. Sprint Terms and Conditions of Service at 12 (Miller Decl. Exh. A, Docket No. 37-6).

27.    My firm will advance these costs in a class action. No one would advance them to arbitrate an individual claim where the likely recovery is less than $200.

**Attorneys' Fees And Expenses**

28.    Plaintiffs would also incur attorneys' fees and expenses to pursue their individual arbitration. It is difficult to forecast such fees with precision, but it is possible to estimate them based on prior experience. For the reasons discussed above, the most analogous case is the

9

*Brown* arbitration. I would expect attorneys would be required to spend roughly the same level of effort to competently present Plaintiffs' individual case as was required in *Brown*.

29. The table below shows the lodestar fee and expenses claimants' counsel reported in *Brown*, and which were approved by a court during the settlement approval process:

***Brown v. Cellco Partnership d/b/a Verizon Wireless***
**AAA Case No. 11 494 01274 05**

| Firm | Lodestar Fee | Expenses |
| --- | ---: | ---: |
| Law Offices of Scott A. Bursor | $416,859.25 | $74,887.39 |
| Faruqi & Faruqi LLP | $127,767.50 | $7,725.75 |
| Gilman & Pastor LLP | $119,616.00 | $4,220.30 |
| Mager & Goldstein LLP | $51,903.17 | $3,477.36 |
| Lite DePalma Greenberg LLC | $79,005.00 | $194.73 |
| Freed & Weiss LLC | $294,161.91 | $9,236.09 |
| **Total** | **$1,089,312.83** | **$99,741.62** |

The expense figure, however, includes $58,736.68 billed by Mr. Weir's firm for expert work. To avoid double-counting, the total expense figure should be reduced by that amount, to $41,004.94.

30. Based on my experience, I would expect that the prosecution of Plaintiffs' claims in arbitration would require attorneys' fees of approximately $1.1 million, plus an additional $40,000 in attorneys' expenses. My firm will do this work, and advance these costs, on a contingent-fee basis in a class action. No one would do so in an individual arbitration where the likely recovery is less than $200.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed at New York, New York this 15th day of August, 2011.



Scott A. Bursor