**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: SPRINT PREMIUM DATA PLAN MARKETING AND SALES PRACTICES LITIGATION | Civil Action No. 10-cv-6334 (SDW)(MCA)

**OPINION**

March 12, 2012 |

**WIGENTON**, District Judge.

Before this Court is Defendant Sprint Solutions Inc. and Sprint Spectrum L.P.'s motion to compel bilateral arbitration and dismiss or stay all actions pursuant the Federal Arbitration Act, Federal Rule of Civil Procedure 12(b)(1), and 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court holds that additional limited discovery is needed to determine the validity of the agreement to arbitrate between the parties.

**I. Facts**

On or about June 4, 2010, and August 31, 2010, respectively, Sprint Solutions Inc. and Sprint Spectrum L.P. (collectively "Sprint") introduced to the market and began selling two smartphones: the EVO, manufactured by HTC, and the EPIC, manufactured by Samsung. (Second Class Action Complaint ("SCAC") ¶¶ 5-6.) Both phones gave subscribers the ability to operate on 4G networks. (*Id.*) Existing sprint customers with unlimited data plans who purchased either one of the new phone devices were required to pay a premium data fee of

$10.00 per month in order to get unlimited data on the new devices.  (*Id.*)  The premium data fee was not a charge for service on a 4G network.  (*Id.* at ¶ 7.)

The claims in Plaintiffs' SCAC all arise from premium data charges that were added to Plaintiffs' unlimited data plans for their EVO or EPIC phones.  (*See generally* SCAC.) Plaintiffs explicitly base their arguments on the allegation that Sprint doublebills/overbills Plaintiffs and other similarly situated customers for unlimited data through the premium data fee. (SCAC ¶ 2.)  Specifically, each of the Plaintiffs allege breach of contract, unjust enrichment, and violations of various federal and/or state consumer protection statutes.  (*Id.*)  Plaintiffs also seek to have this Court conclude that Sprint's arbitration provision is unenforceable.  (*See generally* SCAC.)

### The Arbitration Agreement

Plaintiffs have alleged and admitted in their complaint that they are parties to a Service Agreement with Sprint ("Service Agreement").  (SCAC ¶¶ 2-3, 33, 38, 46, 79.)  The Arbitration provisions ("Arbitration Agreement") at issue are included in Sprint's Service Agreement.  (*See* Declaration of Stephanie Miller ("Miller Decl.") Ex. A, p. 11.)  The Arbitration Agreement states in pertinent part:

- "We each agree to finally settle all disputes (as defined and subject to any specific exceptions below) only by arbitration." (*Id.*)

- "'Disputes' are any claims or controversies against each other related in any way to our Services or the Agreement, including, but not limited to, coverage, Devices, privacy, or advertising, even if it arises after Services have terminated – this includes claims you bring against our employees, agents, affiliates or other representatives, or that we bring against you." (*Id.* at 12.)

2

- "The FAA [Federal Arbitration Act] applies to this [Service] Agreement and arbitration provision. We each agree the FAA's provisions, not state law, govern all questions of whether a dispute is subject to arbitration." (*Id.*)

- "Unless we each agree otherwise, the Arbitration will be conducted by a single neutral arbitrator and will take place in the county of the last billing address of the Device. We will agree on the arbitrator, and if we cannot agree, then the arbitrator will be appointed by the court as provide by the FAA." (*Id.*)

- "The arbitration will be governed by the arbitration rules selected by the Arbitrator. The federal or state law that applies to the Agreement will also apply during the arbitration." (Miller Decl. Ex. A, p. 12.)

- "We each agree not to pursue arbitration on a classwide basis. We agree that any arbitration will be solely between you and us (Not brought on behalf of or together with another individual's claim). If for any reason any court or arbitrator holds that this restriction is unconscionable or unenforceable, then our agreement to arbitrate doesn't apply and the dispute must be brought in court." (*Id.*)

- "We each are responsible for our respective costs relating to counsel, experts, and witnesses, as well as any other costs relating to arbitration. However, we will cover any arbitration administrative or filing fees above: (a) $25 if you are seeking less than $1,000 from us; or (b) the equivalent court filing fees for a court action in the appropriate jurisdiction if you are seeking $1,000 or more from us." (*Id.*)

- **Exception To Our Agreement To Arbitrate Disputes**

  "Either of us may bring qualifying claims in small claims court. In addition, this arbitration provision does not prevent you from filing your dispute with any federal,

3

state or local government agency that can, if the law allows, seek relief against us on your behalf." (*Id.*)

*Procedural Posture*

The United States Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated and transferred five federal court actions to this Court. (Dkt. No. 14.) Plaintiffs in one of those cases, *Salvatierra v. Sprint*, No. 11-02273, voluntarily dismissed their complaint and demanded arbitration. (*See* No. 11-02274 Dkt. No. 62.) On April 21, 2011, the MDL Panel issued a Conditional Transfer Order for two related class actions: *Turley v. Sprintcom, Inc. et al.*, 11-02534, and *Sommerhauser v. Sprint Nextel Corporation et al.*, 11-04630. (*See Turley v. Sprintcom, Inc. et al.* Dkt. No. 19; *Sommerhauser v. Sprint Nextel Corporation et al.* Dkt. No. 11.) On April 29, 2011, the MDL Panel issued another Conditional Transfer Order transferring *Comstock v. Sprint Solutions, Inc. et al.*, No. 11-02855 to this district to be merged with the current action. Though there are seven matters included in this Multi-District Litigation ("MDL"), only five groups of Plaintiffs appear to have filed the SCAC. It seems that the *Sommerhauser* and *Turley* Plaintiffs are not parties to the SCAC. The SCAC was filed on July 1, 2011, pursuant to an order from Magistrate Judge Madeline Cox-Arleo. (Dkt. No. 34.) On May 16, 2011, Judge Arleo entered an order granting Sprint's motion to stay proceedings. (Dkt. No. 21.) Sprint now moves to compel bilateral arbitration, and dismiss or stay all claims asserted in any complaint that is a part of this MDL including, but not limited to the SCAC.

## II. Standard

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No.

4

10-2287, 2010 WL 3076861, at * 3, (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F.Supp.2d 349, 356 (D.N.J. 2006)).  "In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Id.*  (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980))  A court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists.  *Par-Knit Mills, Inc.*, 636 F.2d at 54.  In making this determination, a court must give the party opposing arbitration "the benefit of all reasonable doubts and inference that may arise." *Id.*  In examining whether certain claims fall within the ambit of an arbitration clause, a court must "focus ... on the 'factual allegations in the complaint rather than the legal causes of action asserted.'"  *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 869 (D.N.J. 1992) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)).  If the court decides that the claims at issue fall within the scope of the arbitration clause, the court must then refer the dispute to arbitration without considering the merits of the case. *See id.*

## III. DISCUSSION

### a.  *Applicable Law*

Plaintiffs argue that both the laws of New Jersey and California must be applied to the instant motion.  (*See* Pls.' Br. 3-4 (citing *In re Vioxx Prod. Liab. Litig.*, 478 F.Supp.2d 897, 903 (E.D. La. 2007), and *In re Mercedes-Benz Tele-Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009).)  However, in *Litman v. Cellco Partnership*, the Third Circuit reasoned that since the

arbitration clause there stated that the FAA applied to the contract and the duty to honor arbitration agreements, federal law and not state law applied to that case.  *See* 655 F.3d 225, 231 fn. 8 (3d Cir. 2011) (citing *Invista S.A.R.L. v. Rhodia*, *S.A.*, 625 F.3d 75, 83 (3d Cir. 2010) ("The Federal Arbitration Act . . . creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes.")).  It should be noted that *Litman* cautioned that state law "applies only to the extent it is consistent with the FAA."  *Id.*

Plaintiffs argue that the Arbitration Agreement is unenforceable because: (1) the Arbitration Agreement is ambiguous and lacks essential terms; (2) the Arbitration Agreement does not specify whether it applies to statutory claims; (3) the Arbitration Agreement does not specify what constitutes exceptions to the agreement; (4) the Arbitration Agreement would impose excessive prohibitive costs, which violate federal law and render the agreement unconscionable[1]; and (5) the arbitration agreement is contrary to the Federal Communications Act ("FCA").  Plaintiffs also argue that Sprint's arbitration agreement violates California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") and seek to enjoin Sprint from continuing the premium data charge on that basis.  (*See generally* Pls.' Br.)

b.  *Ambiguity in the Arbitration Agreement*

Plaintiffs argue that the Arbitration Agreement is invalid because it is missing essential terms and is uncertain. (Pls.' Br. 6.)  Specifically, Plaintiffs argue that the Arbitration Agreement is unclear in that "there is no language . . . specifying the rules governing arbitration or the arbitration forum, let alone the required qualifications of the arbitrator."  (Pls.' Br. 10.)  Plaintiffs find impetus for their argument from the fact that there is case law in New Jersey where arbitration cases were invalidated due to ambiguity and lack of essential terms.

---

[1] Both of these points are discussed as one issue in subsection "e" of this opinion.

As authority, Plaintiffs rely on *Rockel v. Cherry Hill Dodge*, 847 A.2d 621 (N.J. Super. Ct. App. Div. 2004) and *NAACP of Camden Cnty. East v. Foulke Mgmt. Corp.*, 24 A.3d 777 (N.J. Super. Ct. App. Div. 2011).  Plaintiffs argue that the holdings in *Rockel* and *NAACP* should bind the Court here because, similar to the arbitration agreements in those cases, the agreement here lacks "sufficient clarity and consistency".  *See NAACP*, 24 A.3d at 792.  The courts in both *Rockel* and *NAACP* determined that the arbitration agreements at issue in those cases were invalid because both cases involved multiple separate arbitration clauses that were inconsistent and therefore ambiguous. *See Rockel*, 847 A.2d at 623-24 ("Here, the arbitration agreement is highly ambiguous because the parties executed two documents which contain separate and somewhat disparate arbitration clauses. This ambiguity, we conclude, is fatal to the compelling of the arbitration of plaintiffs' CFA claims." (emphasis in original omitted)); *NAACP*, 24 A.3d at 797-98 ("[T]his case involves multiple, conflicting, and unclear arbitration clauses spanning three different documents."). Therefore, *Rockel* and  *NAACP* are inapplicable to the instance case because here, there is only one arbitration clause and the language within is not defective.

In *Vegter v. Forecast Fin. Corp.*, the Western District of Michigan addressed a similar challenge to the terms of an arbitration agreement.  *Vegter v. Forecast Fin. Corp.*, No. 1:07, CV-279 2007 WL 4178947 (W.D. Mich. Nov. 20, 2007).  In *Vegter*, the Plaintiff argued that "the arbitration clause is not a valid contract because it does not contain . . . the method for selecting an arbitrator, the rules or procedures for the arbitration, how the costs of the arbitration will be allocated, and how a consumer can institute arbitration proceedings."  *Id.* at *2.  Regarding the method for naming an arbitrator, the *Vegter* court stated that

> Congress clearly foresaw the possibility that arbitration agreements would not
> specify a method for naming an arbitrator and provided a procedure for federal
> courts to appoint an arbitrator. The procedure set forth in § 5 makes clear that

> Congress intended arbitration agreements to be enforceable when such
> agreements fail to specify a method for naming an arbitrator.

*Id.* at *3.  Regarding the failure to specify rules and procedures for arbitration, the *Vegter*

court reasoned that such a failure is not defective so long as the language of an arbitration

agreement does not give one party exclusive authority to define the arbitral forum.  *See*

*id.*  Therefore, the state law relied on by Plaintiffs is inapposite, and the pertinent federal

law suggests that the Sprint's arbitration clause is not unenforceable due to the absence of

essential terms.

       *c.*  *Applicability of the Arbitration Agreement to Statutory Claims*

     Next, Plaintiffs argue that under New Jersey law, the Arbitration Agreement is invalid

because it does not specifically state that statutory claims are subject to arbitration. To this end,

Plaintiffs rely on *Garfinkel v. Morristown Obstetrics & Gynecology Ass'n*, 168 N.J. 124 (2001).

In that case, the court states that an arbitration clause must contain "some concrete manifestation

of the employee's intent as reflected in the text of the agreement itself." *Garfinkel*, 168 N.J. at

135.  However, as Sprint correctly argues, the Supreme Court distinguished *Garfinkel* in

*Martindale v. Sandvik*, 173 N.J. 76 (2002), by holding that for an arbitration clause to apply to

statutory claims, there need be no explicit reference to statutory claims. Rather, it simply needs

to be broad enough to reasonably encompass such claims. *Martindale*, 173, N.J. at 96.

     In the instant case, the language "any claims or controversies against each other related in

any way to our Services or the Agreement" is sufficiently broad to comply with the requirements

of *Martindale*. "When phrases such as 'any claim arising out of' appear in an arbitration

provision, they are given a broad construction, and typically suggest that a given dispute is

within the scope of an arbitration provision." *Townsend v. Pinnacle Entm't, Inc.*, No. 11–1711,

2012 WL 75968 at *3 (3d Cir. 2012). There are multiple cases in which similar language is

found to fall under these requirements. *See e.g.*, *Opalinski v. Robert Half Int'l, Inc.*, No. 10–2069, 2011 WL 4729009 (D.N.J. 2011) (holding that the language "any dispute or claim arising out of or relating to Employee's employment, termination of employment or any provision of this Agreement" was sufficiently broad); *Blumert v. Wells Fargo and Co.*, No. L–3495–09, 2011 WL 3557528 at *1 (N.J. Super. Ct. App. Div. 2011) (holding that the language "any and all claims or controversies arising out of or related to my application or candidacy for employment" was sufficiently broad). Therefore the language of the Arbitration Agreement does not render it invalid, although it would be preferred to have an explicit recognition of a waiver of statutory claims. *See Blumert*, 2011 WL 3557528 at *4 ("Clearly it would be preferable if the arbitration clause here explicitly included a waiver of the right to judicial adjudication.")

   d.   <u>Exceptions to the Arbitration Agreement</u>

Plaintiffs argue that the Arbitration Agreement contains "conflicting terms concerning whether and when a customer should file a dispute in arbitration, 'small claims court,' or with a 'federal, state or local government agency.'" (Pls.' Br. 11.)  Plaintiffs argue that the Arbitration Agreement does not provide specific exceptions for circumstances when arbitration will not apply.  (*Id.*)  Plaintiffs argue that "laypersons, such as Plaintiffs in the present case, are impermissibly provided with conflicting and ambiguous contract terms as to when and where they are permitted to submit claims for resolution." (*Id.*)  Plaintiffs cite no case law to support this proposition other than *Rockel* and *NAACP* which, as aforementioned, are inapplicable here because they dealt with multiple agreements.

Sprint cites filings from the recent Third Circuit case of *Litman v. Cellco Partnership*, 655 F.3d 225 (3d Cir. 2011) in which the court upheld an arbitration agreement which contained nearly identical exceptions for small claims and eligible federal, state, or local government issues. It does not appear that the specific issue of exceptions was raised in *Litman*; however,

without precedent stating the contrary, this Court sees no reason to hold the Arbitration

Agreement at issue to be invalid for reasons Plaintiffs submit.

   e.   _Unconscionability_

   Plaintiffs argue that the Arbitration Agreement is unconscionable because: (1) it is

ambiguous due to the lack of essential terms; (2) of the likelihood of excessive arbitral fees[2];

 and (3) the prohibition on class arbitration in conjunction with the arbitral costs would preclude

Plaintiffs from seeking to assert their claims.  (Pls.' Br. 27.)  Since Plaintiffs' argument regarding

the lack of essential terms has already been found not to render the arbitration agreement

unenforceable, it follows that a similar argument in an attempt to prove unconscionability would

also fail.  Therefore, this Court will only discuss Plaintiffs' argument concerning prohibitive

costs.

   "The final phrase of § 2 . . . permits arbitration agreements to be declared unenforceable

'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving

clause permits agreements to arbitrate to be invalidated by 'generally applicable contract

defenses, such as fraud, duress, or unconscionability'" _AT&T Mobility LLC v._

_Concepcion_, 131 S. Ct. 1740, 1746 (2011) ("_Concepcion_[3]").  For an agreement to be

unconscionable, it must be found to be both procedurally and substantively unconscionable. _See_

_Antkowiak v. Tax Masters_, No. 11-1882, 2011 WL 6425567, at *2 (3d Cir. 2011).

---

[2] The discussion of this argument will be subsumed in the discussion of prohibitive costs as they relate to the unconscionability analysis.

[3] The landmark Supreme Court case of _AT&T Mobility LLC v. Concepcion_, 131 S. Ct.1740 (2011) ("_Concepcion_") dealt with the issue of unconscionability of classwide arbitration waivers in arbitration agreements. In discussing the issue of unconscionability, the Court looked to the Federal Arbitration Act ("FAA") to determine what law prevails when a state law "is alleged to have been applied in a fashion that disfavors arbitration." _Id_. at 1747.  Ultimately, the Court found that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  _Id_. at 1748.  _Concepcion_ dealt with California law, therefore _Concepcion_ is controlling regarding California Plaintiffs in this case.  Regarding the New Jersey Plaintiffs, the FAA preempts the rule enunciated in _Muhammad v. County Bank of Rehoboth Beach, Delaware_, 189 N.J. 1 (2006) that class arbitration waivers are unconscionable and unenforceable under New Jersey law.  _See_

i.   *Procedural Unconscionability*

"In addressing a claim that an arbitration clause is unconscionable, we apply the ordinary state law principles ... of the involved state or territory." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir. 2010). Therefore, we must look to the state law of both New Jersey and California in analyzing procedural unconscionability.

a.   <u>New Jersey Law</u>

"Procedural unconscionability evaluates unfairness in the formation of the contract by examining age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Bourgeois v. Nordstrom, Inc.*, No. 11–2442, 2012 WL 42917, at *6 (D.N.J. 2012) (internal quotation and citation omitted). *Concepcion* explicitly states that consumer contracts are considered adhesive. *Concepcion*, 131 S. Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). "New Jersey case law provides that adhesion contracts invariably evidence some characteristics of procedural unconscionability, and a careful fact-sensitive examination into substantive unconscionability is generally required." *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 493 (3d Cir. 2011) (internal quotations and citation omitted).

Under New Jersey law, "[t]he observation that a contract falls within the definition of a contract of adhesion is not dispositive of the issue of enforceability." *Martindale v. Sandvik*, 173 N.J. 76, 89 (2002). In determining whether a contract, or in this instance an arbitration agreement, is enforceable, New Jersey law relies on the four *Rudbart* factors which look "not only to the take-it-or-leave-it nature" of an adhesion contract, "but also to: [(1)] the subject

---

generally *Litman*, 655 F.3d 225.  Therefore, Plaintiffs argument regarding the unconscionability of the Arbitration Agreement's classwide arbitration waiver fails.

matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interests affected by the contract." *Delta Funding Corp. v.* Harris, 189 N.J. 28, 40 (2006) (quoting *Rudbart v. N.J. Dist. Water Supply Comm'n,* 127 N.J. 344, 345 (1992). Even where the first three factors suggest a high level of procedural unconscionability, those factors cannot, by themselves, render a contract unenforceable. *See Harris*, 189 N.J. at 40-41, *accord Muhammad v. Cnty Bank of Rehoboth Beach*, 189 N.J. 1, 19 (2006). Considering the New Jersey Supreme Court's analysis in *Harris* and *Muhammad*, this Court reasons that the fourth *Rudbart* factor is dispositive, and therefore is the only factor requiring discussion. *See id.* "In both cases, the New Jersey Supreme Court focused on the fourth factor, the public interest, in analyzing the disputed clause in each contract." *Cohen v. Chase Bank, N.A.*, 679 F. Supp.2d 582, 593 (D.N.J. 2010). Regarding the public interest as it pertains to fee-splitting provisions, *Spinetti v. Service Corp. Int'l*, 324 F.3d 212 (3d Cir. 2003) is instructive. In *Spinetti*, the Third Circuit acknowledged that

> the concern is that cost-splitting provisions will deter potential litigants from bringing their statutory claims in the arbitral forum. When the cost-splitting provision is in the arbitration agreement, potential litigants who read the arbitration agreement will discover that they will be liable, potentially, for fees if they bring their claim in the arbitral forum and thus may be deterred from doing so.

*Spinetti*, 312 F.3d at 218 n.2 (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir.2003)). Since fee-splitting goes against the public interest, the Arbitration Agreement appears to be procedurally unconscionable under New Jersey law.

      b.  <u>California Law</u>

Under California law, procedural unconscionability has two components: oppression and surprise. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "'Oppression' arises from an inequality of bargaining power which results in no real negotiation

12

and 'an absence of meaningful choice,'" . . . [while] "'[s]urprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix form drafted by the party seeking to enforce the disputed terms." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008). "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).

In the case of *Lau*, the United States District Court for the Northern District of California examined the unconscionability of an arbitration clause in a retail installment sale contract. Regarding the element of surprise, the *Lau* court determined that even though the arbitration clause was prominently displayed, it was still hidden on the back of a densely typed pre-printed form. *Lau v. Mercedes-Benz USA, LLC*, No. 11–1940, 2012 WL 370557, at *8.[4] Regarding the element of oppression, the *Lau* court emphasized that "Mr. Lau was never offered an opportunity to negotiate the inclusion or exclusion of specific pre-printed terms." *Id*. at *9.  In the instant case, there was no element of surprise because the arbitration clause was not similarly hidden to that in the *Lau* case. It was in the middle of a pre-printed form, and was not on the back of the form. However, similar to *Lau*, Plaintiffs in this action also did not have the opportunity to negotiate the terms of the Service Agreement, which sways the Arbitration Agreement closer towards being procedurally unconscionable.

Because it is not completely clear whether the agreement in our case is procedurally unconscionable, the analysis of substantive unconscionability may be more helpful in

---

[4] In this case, Plaintiffs do not spend much time making the argument that the arbitration clause was hidden. Instead, their focus is on whether or not the prohibitive costs, which they allege are silently built in to the agreement, are within the reasonable expectations of customers. (Pls.' Br. 26.)  Even though, Plaintiffs' arguments do not mirror those in *Lau*, *Lau* still provides guidance on analyzing consumer contracts under California law.

determining the validity of the arbitration agreement. "While procedural unconscionability focuses on the element of 'oppression' or 'surprise' due to unequal bargaining power," substantive unconscionability centers on 'overly harsh,' or 'one-sided' results." *Id*. at *7 (internal citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. This suggests that under California law, a court must weigh the amount of each type of unconscionability, and if there is a large amount of one, there need not be as much of the other. Under the rule of *Armendariz*, which stands even after *Concepcion*, because there is some element of procedural unconscionability, if the agreement is sufficiently substantively unconscionable, then the Arbitration Agreement can still be found to be unconscionable as a whole.

   i. *Substantive Unconscionability*

     The question of substantive unconscionability in this case is essentially one of prohibitive costs. To state it simply, the issue is whether it is substantively unconscionable to require Plaintiffs to cover arbitral costs that would be burdensome if Plaintiffs were to arbitrate their claims individually. California law seems to favor costs being shifted toward the employer, or more generally the stronger party, in an arbitration agreement. "*Armendariz* . . . categorically imposes costs unique to arbitration on employers when unwaivable rights pursuant to a mandatory employment arbitration agreement are at stake." *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1577 (Cal. Ct. App. 2009). *Armendariz* applied to a claim brought under California's Fair Employment and Housing Act (FEHA), but it has been invoked with regard to fee-splitting provisions in arbitration agreements as well. *See AT&T Mobility II, LLC v. Pestano*, No. C 07-05463, 2008 WL 682523, at *6 (N.D. Cal. 2008).

14

In the instant case, however, California law actually requires that federal law be applied. *See Parada*, 176 Cal. App. 4th at 1579. ("[T]he fee-shifting principle of *Armendariz* . . . does not apply here because this case does not arise under the FEHA or involve claims for wrongful termination of employment in violation of public policy. Another approach—that of the FAA—is inapplicable because the . . . Agreements provide they are governed by California law.") Unlike in *Parada*, the agreement in the instant case explicitly states that the FAA governs the arbitration provision and "all questions of whether a dispute is subject to arbitration." (Miller Decl., Ex. A., p. 12.) Therefore, it would appear that the law under the FAA should guide this analysis. Regarding the application of New Jersey law, this Court relies on the Supreme Court precedent set forth below.

In conducting an analysis under the FAA, the controlling law can be found in two cases. The first case that is instructive on substantive unconscionability is *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000). In *Green Tree* the Court held that an arbitration agreement which did not have a specific provision regarding costs would be unenforceable under the FAA if it made arbitration "prohibitively expensive." *Green Tree Fin. Corp.*, 531 U.S. at 92. The Court further stated that the party opposing arbitration was responsible for showing the likelihood of said costs being "prohibitive." *Id*

Unlike the agreement in *Green Tree*, here the Arbitration Agreement is not silent as to arbitration costs. Instead, the Arbitration Agreement contains a clear fee-splitting provision. (Miller Decl., Ex. A., p. 12.) The Arbitration Agreement states that the parties are jointly responsible for arbitration costs, however Sprint agrees to cover arbitration administrative and filing fees in excess of $25 if the customer is seeking to recover less than $1000, or the cost of court filing fees in the applicable jurisdiction if the claim is for more than $1000. (*Id.*)

15

The second instructive case on the issues of unconscionability is *Blair v. Scott*, 283 F.3d 595 (3d Cir. 2002).  In *Blair*, the Third Circuit addressed fee-splitting provisions in light of *Green Tree*. The *Blair* court stated that the presence of fee-splitting alone is not enough to make an arbitration agreement unconscionable.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610. (3d Cir. 2002). The Third Circuit further stated that for it to hold the mere existence of a fee-splitting provision to be per se unconscionable "would run counter to the strong federal preference for arbitration and the liberal policy regarding arbitration." *Id.*

   *Blair* established a test to determine whether a fee-splitting provision was prohibitive under *Green Tree*, and thereby rendered an agreement substantively unconscionable. The test consisted of two separate parts.  First, a court must look at the projected costs that would apply per the arbitration rules set forth in the agreement.  *See Blair*, 283 F.3d at 607-08. Second, a court must look at the individual plaintiff's ability to pay the projected costs. *See Id.*; *Antkowiak*, 2011 WL 6425567, at *3 (applying the same test) (post *Concepcion* decision).  It is Plaintiffs' responsibility to make a showing as to both factors. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 285 (3d Cir. 2004). This test is based on the original *Green Tree* standard. *See Green Tree Fin. Corp.*, 531 U.S. 607-08.  Also, similar tests have been adopted in other circuits.  *See e.g.*, *Bradford v. Rockwell Semiconductor Sys. Inc.*, 238 F.3d 549, 556 (4th Cir.2001); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). The *Blair* test has also been cited and applied in California. *Velez v. Cintas Corp.*, No. 03-01180, 2005 WL 1048699, at *4, n. 4. (N.D. Cal. 2005).

   When applying the test enunciated in *Blair*, it is clear that the information provided by each party in the instant case is insufficient to make a determination regarding prohibitive costs. Plaintiffs submitted expected costs and attorney's fees based on what Plaintiffs claim to be a

comparable arbitration proceeding (Pls.' Br. 19); however, Sprint has clarified that the arbitration proceeding relied on by Plaintiffs was a class-wide arbitration and not a bilateral arbitration as called for in the Arbitration Agreement.  (Defs.' Br. 10-11; Declaration of Lauri A. Mazzuchetti ("Mazzuchetii Decl.") Ex. A.)   In the case on which Plaintiffs rely, the compensation for the arbitrator was $101,150 for 289 hours of work.  (Scott A. Bursor Declaration ("Bursor Decl.") ¶ 14.)  However, that case is inapposite since it was a classwide arbitration and here Plaintiffs argue that they would not be able to afford arbitration costs individually.  (Pls.' Br. 20.)  Sprint, on the other hand, cites rules from the American Arbitration Association which demonstrate that for cases in which no claim exceeds $75,000, arbitrators are paid $250 for a desk arbitration or telephone hearing, and $750 for an in person hearing.  (Mazzuchetti Decl. Ex. C.) Sprint has also provided documents showing "multiple consumer arbitrations where the total arbitration compensation was only $250.00, including for claims brought by consumers against wireless carriers." (Def.'s Reply Br. 12.; *see* Mazzuchetti Decl. Ex. D.)   Therefore, it is difficult to determine an accurate estimate of costs since the discrepancy between the parties' proffered costs regarding compensation is so far apart.

Plaintiffs also submitted a declaration from an expert in telecommunications and economics.  (*See* Declaration of Colin B. Weir ("Weir Decl.").)  Plaintiffs argue that Mr. Weir's services would be necessary if Plaintiffs were to individually arbitrate their claims, but fail to support their contention by showing the use of a similar expert in similar cases.  Mr. Weir concludes in his declaration that if Plaintiffs were to proceed with their claims through individual arbitration, each Plaintiff would spend between $50,000 and $75,000 as part of an initial study to scientifically substantiate their claims.  (Weir Decl. ¶ 8.)  Mr. Weir also contends that Plaintiffs would spend at least the same amount on expert fees to prepare the case for arbitration.  (*Id.*)

17

While Mr. Weir's contentions may have merit, this Court has no way of determining the credibility of same as Plaintiffs have not provided this Court with examples of similar past arbitration proceedings to demonstrate whether Mr. Weir's contentions hold true.

It is also important to note that some of the Plaintiffs did submit affidavits which included information such as their salary and their inability to pay the expected cost of arbitration based on the numbers provided from the class arbitration on which Plaintiffs base their estimate.  (*See* Dkt. no. 38 attachments 4-5, 7-12.)  Interestingly, however, only eight of the twelve Plaintiffs opposing Sprint's motion to compel arbitration submitted such affidavits. Oddly enough, the Plaintiffs that have submitted affidavits state that the cost of individual arbitration will be over $500,000, which is not reflected in Mr. Weir's declaration.  In light of the evidence submitted by Plaintiffs, since the evidence does not permit this Court to reach a conclusion regarding prohibitive costs, the only appropriate step to take is to allow for limited further discovery with regard to the projected costs of an arbitration that would take place under the Arbitration Agreement, and the ability of Plaintiffs to pay them.  *See Antkowiak*, 2011 WL 6425567, at *3 (The Third Circuit remanded the case to the lower court because the record did not contain evidence that enabled the court to make a determination regarding prohibitive costs); *Berrios v. Hovic*, No. 05-192, 2010 WL 2384589 at * 7, fn. 4 (D.V.I. June 9, 2010) (The District Court acknowledged that in cases where limited supplemental discovery has been permitted for purposes of determining prohibitive costs, a plaintiff provided some basis for limited discovery, such as an affidavit of financial status or an estimation of arbitral costs).

Plaintiffs are encouraged to provide information similar to that discussed in the California cases of *Gutierrez* and *Parada* cited *supra*. In *Gutierrez*,

> Plaintiffs presented substantial evidence in the trial court that the administrative fees exceeded their ability to pay. Gutierrez submitted a declaration setting forth plaintiffs' income, expenses and savings, and provided the court with a copy of the AAA rules in effect at the time AutoNation moved to compel arbitration. In addition, plaintiffs submitted a declaration from an AAA administrator describing how costs are to be calculated under those rules.

*Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90-91 (Cal. Ct. App. 2003).  In *Parada*, the plaintiff provided a copy of the rules and procedures of the arbitration organization discussed in the agreement.  *See Parada*, 176 Cal. App. 4th at 1579.  In addition, fee schedules for eleven different arbitrators associated with the organization were provided to the court.  *See id.*  Moreover, each individual plaintiff must submit objective evidence as to their ability, or lack thereof, to pay costs associated with arbitration.

One other key element as to the arbitration costs is the length of the arbitration proceeding in this particular case. The *Blair* court, which remanded for a similar factual inquiry as this Court does today, discussed this issue:

> Limited discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings should adequately establish the costs of arbitration, and give [Plaintiffs] the opportunity to prove, as required under *Green Tree*, that resort to arbitration would deny [the Plaintiffs] a forum to vindicate [their] statutory rights.

*Blair*, 283 F.3d at 610.  Comparable thorough discovery into the approximate length of similar arbitration proceedings should be undertaken in the instant case as well.

> f.   *Severability of the Fee-splitting Provision*

Plaintiffs argue that the fee-splitting provision of the Agreement is not severable, thereby making the Arbitration Agreement, if found unconscionable, incorrigible.  (Pls.' Br. 27.)

Plaintiffs in their brief rely on a provision in the Service Agreement prohibiting severance. (*Id.*)[5] However, Sprint clarifies and the papers illustrate that Plaintiffs relied on a portion of the Arbitration Agreement, that when read in context only applies to the class action waiver provision of the Service Agreement. (*See* Defs.' Br. 10 n. 8; Miller Decl., Ex. A, p. 12.) Despite Plaintiffs' flawed argument, this Court looks to case law for direction.

In *Morrison,* the case on which the *Spinetti* court relied, the Sixth Circuit stated that when addressing the issue of severability, courts should look to the parties' intentions as revealed by their agreement. *See Morrison,* 317 F.3d at 673. The Sixth Circuit reasoned that if a severability clause is included in an agreement, then the clause expresses the parties' intentions in favor of severance. *Id.* at 674-75. Here, the Service Agreement contains language which clearly states "Except as the [Service] Agreement specifically provides otherwise, if any part of the Agreement is held invalid or unenforceable, the rest of this Agreement remains in full force and effect." (Miller Decl., Ex. A, p. 13.) In light of the severance clause, this Court understands the parties' intentions to indicate a preference for severance.

### g. *Arbitrability of Plaintiffs' CLRA and UCL Claims*

Plaintiffs seek to enjoin Sprint from continuing to charge Sprint customers a premium data fee as well as ordering Sprint to: (1) reverse any such charges that remain pending or unpaid, (2) make full restitution of all monies obtained as a result of the premium data charge, and (3) be disgorged of all profits resulting from the premium data charge. Plaintiffs' argument that their claims under the CLRA and UCL are not arbitrable is unsupported and unavailing. Plaintiffs cite two cases to support this proposition: *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066 (1999) and *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303

---

[5] "If for any reason any court or arbitrator holds that this restriction is unconscionable or unenforceable, then our agreement to arbitrate doesn't apply and the dispute must be brought in court." (Miller Decl. Ex. A, p. 12.)

(2003). These cases have been explicitly abrogated following the *Concepcion* decision, and a number of California cases have allowed arbitration for both CLRA and UCL claims. *See e.g.*, *Nelson v. AT&T Mobility LLC*, No. C10–4802, 2011 WL 3651153, at *4 (N.D. Cal 2011) ("The FAA therefore preempts the holdings of the California Supreme Court

in *Broughton* and *Cruz* that the CLRA and UCL, respectively, do not permit arbitration of public injunctive relief claims."); *Kaltwasser v. AT&T Mobility LLC*, No. C07–00411, 2011 WL 4381748, at *7 (N.D. Cal. 2011). Moreover, and more importantly, *Broughton and Cruz* have narrow holdings that are inapplicable here. *See Meyer v. T-Mobile USA Inc.*, No. C10-05858, 2011 WL 4434810 * at 8-9 (N.D.Cal.  Sept. 23, 2011) (*Cruz*  and *Broughton* "prohibit outright the arbitration of all injunctive relief claims brought in the capacity of a private attorney general that seek a public injunction.") Therefore, the argument made under *Broughton* and *Cruz* is unpersuasive.

      *h.*  <u>Enforceability of Arbitration Agreement Under the FCA</u>

      The argument made by Plaintiffs that the Arbitration Agreement is unenforceable under the Federal Communications Act (FCA) fails for two reasons. First, Plaintiffs base this argument on the proposition that "[b]ecause the arbitration clause contained in Sprint's Terms is unconscionable and unreasonable for the reasons fully set forth above, logic dictates that the arbitration clause is also unjust and unreasonable under 47 U.S.C. § 201(b) which requires the same be declared unlawful."  (Pls.' Br. 29.)  As this Court is currently without sufficient information to make a determination as to the unconscionability of the arbitration clause, as discussed *supra*, Plaintiffs' presumption fails.

      Even if a claim could be made without a determination of unconscionability, case law suggests that FCA claims are arbitrable.  *Arellano v. T-Mobile USA, Inc.*, No. C10–05663, 2011

WL 1842712 (N.D. Cal. 2011), included an FCA claim in addition to claims under the CLRA and the UCL and concluded that all the claims were arbitrable. *Id*. at *1-*2. This Court sees no reason to differ from this decision.

**CONCLUSION**

For the reasons set forth above, this Court cannot reach a decision regarding the validity of the Arbitration Agreement.  Therefore, this Court **ORDERS** further limited factual inquiry into the costs of arbitration and Plaintiffs' ability or inability to pay said costs.


                                                        s/Susan D. Wigenton, U.S.D.J.

Orig:    Clerk
Cc:      Madeline Cox Arleo, U.S.M.J.
         Parties